899 P.2d 411

**CITY OF CHUBBUCK, Plaintiff–Appellant,**

v.

**CITY OF POCATELLO, Defendant–Respondent (Two Cases).**

Nos. 20941, 21253.

Supreme Court of Idaho,
Pocatello, September 1994 Term.

March 28, 1995.

Rehearing Denied Aug. 17, 1995.

Elam & Burke, P.A., Boise, for appellant. Ryan P. Armbruster, argued.

Quane, Smith, Howard & Hull, Pocatello, for respondent. Douglas J. Balfour, argued.

REINHARDT, Justice Pro Tem.

## I.

### BACKGROUND AND FACTS

In 1972, the City of Chubbuck (Chubbuck) and the City of Pocatello (Pocatello) entered into a wastewater treatment contract. Under the terms of the contract, Chubbuck developed a wastewater collection system to deliver Chubbuck's wastewater to Pocatello, where the wastewater was treated at the Pocatello wastewater treatment facility.

In 1983, after the original contract expired, Chubbuck and Pocatello entered into a new contract. Although the terms of the new contract allowed the Pocatello City Council to set wastewater treatment rates by resolution, Pocatello's authority was limited to setting rates that provide sufficient revenue for Pocatello to recoup its allocated cost of service. Under the terms of the contract, the allocated cost of service was to be determined by a three-year study conducted by the Black and Veatch engineering firm. The study was conducted to assist Pocatello in setting water and wastewater treatment rates. From the effective date of the contract, December 1, 1983, through 1990, Pocatello charged Chubbuck wastewater treatment rates sufficient to recoup an eleven percent rate of return on the allocated cost of treatment determined in the 1983 Black and Veatch study.

In 1989, Pocatello hired Black and Veatch to conduct another study to appraise the cost of service allocation for providing wastewater treatment to various customers, including Chubbuck. The second study, which was completed in 1990, differed from the 1983

study in two significant respects. First, the rate of return on investment recommended in the 1990 study was three percent lower than the rate of return proposed in the 1983 study. This difference apparently reflects a change in prevailing interest rates between 1983 and 1990. The second difference between the studies was the method used to calculate the value of the treatment facility. The 1983 study was based on the net value of the treatment facility. The 1990 study based the cost of service allocation on the total value of the plant. This difference in valuation increased the estimated capital investment in the facility from $4,683,000 under the 1983 study to $12,790,500 under the 1990 study. Although offset somewhat by the decreased rate of return, this valuation resulted in an increase in the rate Chubbuck residents were charged for wastewater treatment.

Chubbuck filed a notice of claim with the Pocatello City Clerk and then filed this action against Pocatello in district court. Chubbuck alleged four causes of action against Pocatello. In its complaint, Chubbuck claimed: (1) that Pocatello breached the contract by charging rates that were not "based upon the 1983 Black and Veatch study," as required by the contract; (2) that Pocatello violated the Revenue Bond Act by operating the facility primarily as a source of revenue; (3) that, in violation of federal regulations, Pocatello used factors other than actual wastewater use as the basis of its rates; and (4) that Pocatello charged a rate in excess of that authorized by statute. Based on the above, essentially undisputed evidence, Pocatello and Chubbuck filed cross-motions for summary judgment. The district court granted summary judgment in favor of Pocatello, holding that the record revealed no disputed issues of material fact and Pocatello was entitled to judgment as a matter of law on all four causes of action stated by Chubbuck.

The district court also awarded attorney fees to Pocatello under I.C. § 12–120(3). After a subsequent hearing before a different district judge on the issue of costs and attorney fees, Pocatello was awarded $1,058.70 for costs as a matter of right, $8,415.41 for discretionary costs, and $30,000 for attorney

fees. Chubbuck appeals the summary judgment in favor of Pocatello, claiming that the trial court erred in either concluding that Pocatello did not breach the contract with Chubbuck or in concluding that Chubbuck was not entitled to relief on the alternative grounds of quasi-estoppel. Chubbuck also appeals the dismissal of Chubbuck's objection to the award of costs and attorney fees to Pocatello.

## II.

### STANDARD OF REVIEW

Rule 56(c) of the Idaho Rules of Civil Procedure direct the trial court to enter summary judgment "when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When this Court reviews the trial court's ruling on such a motion, this Court employs the same standard properly employed by the trial court when originally ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Both this Court and the district court must liberally construe the record in favor of the party opposing the motion, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *Id.; Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994).

The standard applied when ruling on or reviewing the ruling on a motion for summary judgment is not lessened simply because both parties have moved for summary judgment. *Kromrei v. AID Ins. Co.*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986); *Farmer's Ins. of Idaho v. Brown*, 97 Idaho 380, 381–82, 544 P.2d 1150, 1151–52 (1976). However, when both parties move for summary judgment on the same issues and legal theories based on the same, essentially uncontroverted facts, the record is unlikely to reveal any genuine issue of material fact. *See Kromrei*, 110 Idaho at 551, 716 P.2d at 1323 ("However, where, as in the present case, both parties have moved for summary judgment based on the same evi-

dentiary facts and the same issues and theories, they have effectively stipulated that there is no genuine issue of material fact and summary judgment is therefor appropriate."). In order to determine whether either party is entitled to summary judgment, this Court must examine each motion separately, reviewing the record and the reasonable inferences that can be drawn from it in favor of each party's opposition to the motions for summary judgment.

## III.

### POCATELLO BREACHED THE WASTEWATER TREATMENT CONTRACT

■■■ If the terms of a contract are clear and unambiguous, the interpretation of the contract's meaning is a question of law. *E.g., Ada County Assessor v. Taylor*, 124 Idaho 550, 553, 861 P.2d 1215, 1218 (1993). If, on the other hand, the terms of a contract are ambiguous, the interpretation of that contract's meaning is a question of fact. *Id.; Bondy v. Levy*, 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992). The initial inquiry into whether a contract is ambiguous presents a legal question, over which this court exercises free review. *Bondy*, 121 Idaho at 997, 829 P.2d at 1346. In order to determine whether the contract between Pocatello and Chubbuck is ambiguous, this Court must determine whether the terms of that contract are reasonably susceptible to conflicting interpretations. *Id.*

■■■ The source of the dispute between Chubbuck and Pocatello is Section 1 of the contract, which provides:

Pocatello agrees to provide treatment of wastewater originating within the corporate limits of the City of Chubbuck. The cost of treatment shall be at such rates as may from time to time be established by resolution of the Pocatello City Council. The rate for that portion of wastewater delivered through the Chubbuck sewerage system to the Pocatello wastewater treatment facility shall be at a rate that will provide revenue sufficient to return to Pocatello the allocated cost of service. The allocated cost of service takes into account

the fact that the City of Chubbuck maintains the sewerage system within its corporate boundaries and the trunk sewer to the Pocatello Wastewater treatment facility.

The rates for treatment of that portion of the Chubbuck wastewater generated south of I–86 and introduced into the Pocatello sewers will also be established by resolution of the Pocatello City Council.

The cost of service allocation is based on the determination set out in the Black and Veatch study of 1983 for the City of Pocatello.

Chubbuck argues that Pocatello breached this provision of the contract when Pocatello based the rates it charged Chubbuck on the cost of service calculation in the 1990 Black and Veatch study. In response, Pocatello contends that the rate increases reflect a more accurate estimate of the value of the wastewater treatment plant. Although the valuation in the 1990 study was different, Pocatello argues, the 1990 study employed essentially the same methodology to determine the cost of service allocation.

The issue before this Court on Chubbuck's first cause of action therefore turns on whether the provision that "[t]he cost of service allocation is based on the determination set out in the Black and Veatch study of 1983" is ambiguous. Pocatello asserts that a reasonable definition of the word "determination" can include the methodology used to reach the result of the 1983 study, and is not limited to the result itself. We disagree.

■■■ Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous merely because they are not defined in the document where they are used. *Mutual of Enumclaw v. Wilcox*, 123 Idaho 4, 8, 843 P.2d 154, 158 (1992). Both the settled legal meaning and common usage of the word "determination" are contra to the definition urged by Pocatello.

Black's Law Dictionary defines "determination" as:

The decision of a court or administrative agency. It implies an ending or finality of a controversy or suit. To settle or decide by choice of alternatives or possibilities.

The ending or expiration of an estate or interest in property, or of a right, power, or authority. The coming to an end in one way or another.

Black's Law Dictionary 450 (6th ed. 1990). (citations omitted) Webster's definition of determination is "the settling and ending of a controversy esp. by judicial decision: conclusion, decision." Webster's Third New International Dictionary (unabridged) 616 (1971 ed.). This state's statutory and common law applications of the term "determination" similarly demonstrate that the term denotes a conclusive resolution of an issue. *Compare Bunn v. Bunn,* 99 Idaho 710, 712, 587 P.2d 1245, 1247 (1978) ("A determination entails a finding of the facts and an application of the law in order to resolve the legal rights of the litigants....") *with* I.C. § 10–701 ("A Judgment is the final determination of the rights of the parties in an action or proceeding.") (Repealed). Because the word "determination" has a settled definition, the relevant clause in the contract between Chubbuck and Pocatello is not ambiguous, nor is it reasonably susceptible to the interpretation urged by Pocatello.

Under the terms of this clause in the contract, Pocatello was empowered to set wastewater treatment rates "that will provide revenue sufficient to return to Pocatello the allocated cost of service[,]" basing the allocated cost of service on the 1983 Black and Veatch study. By charging rates based on the 1990 study, without providing notice and renegotiating according to the terms of the contract, Pocatello breached the contract with Chubbuck. The trial court therefore erred by granting Pocatello's motion for summary judgment on the contract claim and by denying Chubbuck's motion.

This Court's holding renders moot Chubbuck's additional claim that the trial court should have granted relief on the alternative grounds of quasi-estoppel.

## IV.

### POCATELLO DID NOT VIOLATE THE REVENUE BOND ACT

■ Chubbuck also alleges that, by including a rate of return component in the amount Pocatello charged Chubbuck for wastewater treatment, Pocatello has violated the Revenue Bond Act. I.C. §§ 50–1027 to –1042. The grant of authority provided by the Revenue Bond Act provides that:

Any city acquiring, constructing, reconstructing, improving, bettering or extending any works pursuant to this act, shall manage such works in the most efficient manner consistent with sound economy and public advantage, to the end that the services of such works shall be furnished at the lowest possible cost. No city shall operate any works primarily as a source of revenue to the city, but shall operate all such works for the use and benefit of those served by such works and for the promotion of the welfare and for the improvement of the health, safety, comfort, and convenience of the inhabitants of the city.

I.C. § 50–1028. Chubbuck asserts that, by charging a rate of return for Chubbuck's wastewater treatment, Pocatello is operating the wastewater treatment plant "primarily as a source of revenue" in violation of I.C. § 50–1028. Nothing in the record support's Chubbuck's assertion that the wastewater treatment plant is being operated primarily as a source of revenue.

Although Pocatello charges a rate of return on the allocated cost of service, the Revenue Bond Act allows the collection of revenues sufficient to cover the costs of operation, maintenance, replacement and depreciation, including creating and maintaining reserves for such expenses. I.C. § 50–1033(b), (e); *see also Loomis v. City of Hailey,* 119 Idaho 434, 441, 807 P.2d 1272, 1279 (1991) ("We hold that under these circumstances a municipality may collect fees, rates or charges pursuant to the power granted in the Idaho Revenue Bond Act to pay for maintenance, depreciation and replacement of system components."). Chubbuck has made no showing that the fees collected by Pocatello have been used for any purpose other than those purposes specifically provided for by the Revenue Bond Act. The trial court therefore did not err in concluding that Pocatello did not violate the Revenue Bond Act.

## V.

### THE IDAHO TORT CLAIMS ACT DOES NOT PROVIDE A DEFENSE IN A BREACH OF CONTRACT ACTION

■ Pocatello asserts that the Idaho Tort Claims act renders it immune from suit. The Idaho Tort Claims Act, I.C. §§ 6–901 to –929, governs the liability of governmental entities and political subdivisions for damages arising out of "negligent or otherwise wrongful acts or omissions...." I.C. § 6–903. Because Chubbuck's claim is based on Pocatello's breach of a contractual obligation, rather than negligent or wrongful conduct, the Idaho Tort Claims Act is inapplicable. *See County of Kootenai v. Western Casualty & Sur. Co.*, 113 Idaho 908, 916, 750 P.2d 87, 95 (1988) ("Since this action is based upon rights held and responsibilities due under an insurance contract, it is unnecessary to pursue the issue of the applicability of the Idaho Tort Claims Act."). The Tort Claims act is therefore not a bar to Chubbuck's cause of action for breach of contract.

## VI.

### NEITHER PARTY IS ENTITLED TO ATTORNEY FEES ON APPEAL

■ Because the trial court's award of discretionary costs and attorney fees to Pocatello was based on that court's holding that Pocatello was the prevailing party, the award of fees and costs is vacated. Because the decision of the district court is reversed on appeal, Pocatello's application for attorney fees on appeal is denied. Chubbuck did not seek attorney fees on appeal and has therefore waived the right to apply for fees. I.A.R. 41.

## VII.

### CONCLUSION

The district court's order denying Chubbuck's motion for summary judgment and granting summary judgment in favor of Pocatello is reversed in part, affirmed in part, and the case remanded for further proceedings consistent with this opinion. The district court's order awarding costs and attorney fees to Pocatello is vacated. Costs on appeal are awarded to appellant. No attorney fees are awarded on appeal.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.