17 P.3d 287

C. Richard NORDSTROM,
Plaintiff–Appellant,

v.

Michael GUINDON, Defendant–
Respondent.

No. 24925.

Supreme Court of Idaho,
Coeur d'Alene, October 2000 Term.

Dec. 29, 2000.

Evans Keane, Kellogg, for appellant. Charles L.A. Cox argued.

Witherspoon, Kelley, Davenport & Toole, P.S., Coeur d'Alene, for respondent. Mark A. Ellingsen argued.

TROUT, Chief Justice.

C. Richard Nordstrom ("Nordstrom") appeals the district court's grant of summary judgment holding restrictive covenants had been properly amended by a sufficient number of parcel owners to allow Defendant/Respondent, Michael Guindon ("Guindon"), to keep pigs on his property.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Nordstrom, owner of several parcels in the Nettleton Estates ("Nettleton"), in Kootenai County, brought suit against Guindon, owner of a parcel in Nettleton, alleging Guindon's keeping of hogs on his parcel violated the Amended Nettleton Estates Protective Covenants ("Covenants") governing the respective properties.

The parties stipulated Guindon would remove the hogs from his premises, pay Nordstrom's attorney's fees and costs, and Nordstrom would be entitled to judgment if Guindon failed to comply with any of the requirements of the stipulation. On October 20, 1995, a judgment was entered for attorney's fees and costs against Guindon for failure to comply with the stipulation. Three days later, Guindon, along with four other parcel owners in Nettleton, filed an Amendment to the Nettleton Estates Protective Covenants ("Amended Covenants") in the Kootenai County Recorder's Office, providing, in part, that the keeping of three pigs was within the Covenants.[1]

On December 5, 1995, Kathy W. Kennett ("Kennett"), an adjacent landowner consented to annexing her lot into Nettleton. Kennett declared that she did thereby join in and consent to the previously recorded amendments. Kennett's consent to the amendments increased the total number of marital communities/parcel owners to eight, with six, including Kennett, or 75% of the owners, consenting to the amendment which would allow pigs to be kept on the property. On December 4, 1995 an order to show cause was issued by the district court requiring Guindon to explain why he should not be held in contempt for failure to abide by the previous judgment. Guindon responded by filing an answer and counterclaim for declaratory judgment contesting the validity of the Covenants, and alternatively, alleging the Covenants had been subsequently amended to allow the keeping of swine on the property. Nordstrom replied, arguing Guindon admitted the Covenants were valid by stipulating to the entry of the Order enforcing the Covenants and the Covenants were not validly amended to allow the keeping of pigs.[2] Both parties subsequently filed Motions for Summary Judgment. In support of his Motion for Summary Judgment, Nordstrom filed an affidavit stating that the intent of the amendment provision was to allow one vote per parcel. Nordstrom also submitted the affidavit of James A. Bloxam, an original signor of the Covenants, concurring with the statements made by Nordstrom. Guindon filed

1. The lot owners that filed the amendment included Bruce and Janelle Star, husband and wife, owners of Lots 6, 7 & 8; Michael Guindon; Jeff and Karen Andrews, husband and wife, owners of lot 4; Conrad and Marilyn Lahr, husband and wife, owners of lot 3 and Dan Rude, owner of lot 11. The district court counted the marital communities as a single unit for voting. This decision is not challenged on appeal; moreover, we find that determination proper where Article IV of the Covenants refers to "adjoining lots" being owned by the "same *person* or *entity*." (emphasis added).

2. As the district court recognized, the suit was in a "peculiar state" because of the judgment entered in December 1995 followed by an answer and counterclaim and reply with no attempt to set aside the original judgment or institute a new action. The district court nevertheless found it had subject matter jurisdiction over the case because the filing of the answer, counterclaim and reply represented a stipulation of the parties that the original judgment be set aside or alternatively, that changed circumstances occurring by way of the purported later amendment to the Covenants are properly considerable by the court in post-judgment enforcement proceedings. No party challenged this finding on appeal.

an affidavit in support of his Motion for Summary Judgment stating that he had complied with the plain and unambiguous language of the covenants in executing an amendment to allow the keeping of pigs on his property.

The district court granted summary judgment to Guindon finding that the Covenants had been appropriately amended to allow the keeping of three pigs and their offspring for up to six months of age. Specifically, the district court found that Guindon had waived his objections to the validity of the Covenants by entering into the Stipulation to remove his hogs and pay attorney's fees, an amendment of the Covenants to include Kennett was not necessary, and in order to reach the necessary 75% majority to amend the Covenants, eligible voters were found to have one vote each rather than the vote being regulated by the number of parcels owned.

The district court subsequently entered a Memorandum Opinion and Order Re: Motion for Reconsideration, denying Nordstrom's motion to reconsider and Guindon's motion for leave to supplement the record. In addition, the district court entered an Order and Judgment awarding attorney's fees and costs to Guindon. Nordstrom filed a timely Notice of Appeal.

## II.

### STANDARD OF REVIEW

This Court's review of a district court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Sun Valley v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 3, 981 P.2d 236, 238 (1999) (citing *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994)). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Where the parties have filed cross-motions for summary judgment relying on the same facts, issues, and theories, the parties effectively stipulate that there is no genuine issue of material fact that would preclude the district court from entering summary judgment. *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999) (citations omitted). Additionally, where the evidentiary facts are undisputed and the trial court will be the trier of fact, "summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Aberdeen–Springfield Canal v. Peiper*, 133 Idaho 82, 86, 982 P.2d 917, 921 (1999)(*citing First Security Bank v. Murphy*, 131 Idaho 787, 790, 964 P.2d 654, 657 (1998) (citation omitted)). In this case, both parties filed motions for summary judgment on substantially the same issues, facts and theories, and the district court was the trier of fact. Therefore, the district court was free to draw the most probable inferences in construing the Covenants and this Court should affirm those inferences if reasonably supported by the record. *Davis*, 133 Idaho at 640, 991 P.2d at 365.

## III.

### DISCUSSION

Nordstrom argues the district court erred in treating the consent of Kennett, an owner of property outside the confines of Nettleton, as a "then parcel owner" for the purposes of amending the Covenants. In addition, Nordstrom contends the district court erred in concluding the Covenants were properly amended by a vote of a 75% majority of the parcel owners, irrespective of lot ownership. Both of these issues are determined by a reading of the Covenants. This Court has previously held covenants that restrict the uses to which a party may use his or her property are valid and enforceable. *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996) (citing *Sun Valley Ctr. v. Sun Valley Co.*, 107 Idaho 411, 413, 690 P.2d 346, 348 (1984)). The rules of construction for restrictive covenants were set forth in detail by this Court in *Brown*.

> When a court interprets a restrictive covenant, it is to apply generally the same rules of construction as are applied to any contract or covenant. *Sun Valley Ctr.*, 107

Idaho at 413, 690 P.2d at 348; *Smith v. Shinn*, 82 Idaho 141, 147, 350 P.2d 348, 351 (1960). Where contract terms are clear and unambiguous, the interpretation of the contract's meaning is a question of law. *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). On the other hand, where the terms of a contract are ambiguous, the interpretation of the contract's meaning is a question of fact. *St. Clair v. Krueger*, 115 Idaho 702, 704, 769 P.2d 579, 581 (1989); *Clark v. St. Paul Property & Liab. Ins. Cos.*, 102 Idaho 756, 757, 639 P.2d 454, 455 (1981). The preliminary question of whether a contract is ambiguous, is a question of law over which this Court exercises free review. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414; *Post*, 125 Idaho at 475, 873 P.2d at 120. "A restrictive covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. It is only if an ambiguity is found that any 'construction' is necessary. Where there is no ambiguity, there is no room for construction; the plain meaning of the language governs." *Post*, 125 Idaho at 475, 873 P.2d at 120 (citations omitted); *Sun Valley Ctr.*, 107 Idaho at 413, 690 P.2d at 348. To determine whether there is an ambiguity in the Restrictive Covenants in the present case, this Court must determine whether the provisions are reasonably susceptible to conflicting interpretations. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414; *City of Boise v. Planet Ins. Co.*, 126 Idaho 51, 55–56, 878 P.2d 750, 754–55 (1994). In interpreting any provisions of a contract or restrictive covenant, the entire agreement must be viewed as a whole. *St. Clair*, 115 Idaho at 705, 769 P.2d at 582.

If an ambiguity is found in the restrictive covenant, the Court is to determine the intent of the parties at the time the instrument was drafted. *Thomas*, 107 Idaho at 404, 690 P.2d at 339. The interpretation of the restrictive covenants intended by the drafters can be ascertained from the language of the covenants, the existing circumstances at the time of the formulation of the covenants, and the conduct of the parties. *Id.*

*Brown*, 129 Idaho at 192–93, 923 P.2d at 437–39. Both parties agree the original restriction prohibiting the keeping of hogs is clear and unambiguous; the parties disagree, however, on the construction of Article XVII, providing for amendment of the Covenants, and Article XVI, allowing the annexation of adjacent property owners into the Covenants.

### A. Article XVII Amendment of the Covenants.

Nordstrom contends Kennett's consent to amend the Covenants was invalid because the Covenants were not first amended according to Article XVII to include Kennett's property in the description of the properties covered by the Covenants. Nordstrom argues without an amendment to add Kennett's property, this property cannot be counted within the 75% majority of then parcel owners of the Nettleton Estates and Kennett cannot vote to amend the covenants.

Article XVII does provide that only "then parcel owners" can amend the restrictive covenants. However, Article XVI, not Article XVII, of the Covenants specifically governs the annexation of property into the Nettleton Estates, and provides:

Any adjacent property or property located in near proximity to the property covered by these covenants may be brought under these covenants subsequently, and the execution of suitable instruments by the owners of such property shall bring them under all the obligations and entitle them to all the privileges of the original parties hereto.

Article XVI simply states that an adjacent landowner may be brought within the Covenants upon execution of a suitable instrument. Because there is no ambiguity in this language, "there is no room for construction, and the plain meaning of the language governs." *Sun Valley Ctr.*, 107 Idaho at 413, 690 P.2d at 348. The only requirement for an adjacent property to join the Covenants is the execution of a suitable instrument by the owner of such property. Upon execution of a suitable instrument that owner is "entitle[d] to all the privileges of the original parties," including, the right to vote to amend the

Covenants. Kennett executed an instrument which both consented to having her brought into the Covenants of the Nettleton Estates and consented to an amendment to the prohibition about keeping swine.

The question then arises, whether Kennett executed a suitable instrument. On November 30, 1995, Kennett executed a "Consent and Declaration of Owner to Amended Nettleton Estates Protective Covenants, Kootenai County, Idaho." This document was recorded on December 5, 1995. The instrument provides in part:

> Kathy W. Kennett ... does hereby consent to join in those certain Amended Nettleton Estates Protective Covenants together with any easement therein, and declares that the same shall in all respects apply to the said property of undersigned owner described herein, and further declares that the property described shall be hereafter held and conveyed subject to the terms and provisions of said Amended Nettleton Estates Protective Covenants as the same may, from time to time be amended, that said property shall be subject to the restrictions and availed of the protections therein provided and that the same shall run with the land described in this consent and declaration.

Nordstrom focuses on language in the instrument, following the above quoted language, which states: "Nothing herein shall be construed as to impose any of the obligations of grantor upon the undersigned owners, successors, and assigns." Nordstrom argues this language disavows the obligation of the original parties and is therefore insufficient as a "suitable instrument" to bring Kennett within the Covenants, which specifically require "the execution of suitable instruments ... shall bring them under all the obligations and entitle them to all the privileges of the original parties hereto."

■ Although the language is conflicting, we agree with the district court's determination that it nevertheless satisfies the requirement of Article XVI as a "suitable instrument." Kennett's consent to join the covenants must be construed as a whole, rather than focusing on an isolated provision, and this Court will give meaning to all

its provisions to the extent possible. *See, Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 257, 846 P.2d 904, 908 (1993); *Moss v. Mid–American Fire and Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982). Kennett's consent, viewed in its entirety, unequivocally subjects Kennett and her property to both the benefits and the burdens related to joining the Covenants. One sentence does not negate the clearly expressed intent of the entire document; therefore, we uphold the district court's determination that Kennett executed a suitable instrument to bring her within the Covenants.

**B. The Covenants provide for one vote per owner, not one vote per lot.**

■ Nordstrom argues, in the alternative, that even with Kennett's consent the amendment was nevertheless invalid because "then parcel owners in Nettleton Estates" should be read to require a counting of parcels, with each parcel owner given a vote for each parcel owned. Under this reading of the Covenants, amendment would not be possible without the consent of Nordstrom, who owns several parcels. Article XVII, AMENDMENT, reads in pertinent part:

> These restrictive covenants may be altered, amended or deleted in whole or in part, if agreed to in writing by seventy-five percent (75%) majority of the then parcel owners in Nettleton Estates.

■ The words of a restrictive covenant must be given their ordinary meaning. Furthermore, "[b]ecause restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants." *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996)(citing *Post v. Murphy*, 125 Idaho 473, 475, 873 P.2d 118, 120 (1994), *Thomas v. Campbell*, 107 Idaho 398, 404, 690 P.2d 333, 339 (1984)). Although there is no Idaho authority directly on point, other jurisdictions construing phrases similar to "majority of then parcel owners" have found the phrase to be "clear and unambiguous and to mean what it says, namely, a majority of lot owners." *See Duffy v. Sunburst Farms E. Mut. Water*

& Agric. Co., Inc., 124 Ariz. 413, 604 P.2d 1124, 1127 (1979)(citing *Cieri v. Gorton,* 179 Mont. 167, 587 P.2d 14, 17 (1978)). We agree with this approach. Standing by itself, the word "owner" means, "the person in whom is vested the ownership, dominion, or title of property." BLACK'S LAW DICTIONARY 1105 (6th ed.1990). The Covenants provide no qualifying language to indicate that one person, as owner of property, should count for either more or less than another according to the number of lots owned. In addition, the use of the phrase "parcel owner" in other Articles of the Covenants specifically refers to parcel owners as individuals and focuses on the actual owner of the property and not the number of parcels owned. This Court will not interpose a meaning that is not clearly evident in the Covenants themselves; therefore, we agree with the district court's determination that Article XVII means exactly what it says, that the restrictions of the Covenants may be altered, amended or deleted by a 75% majority of parcel owners in Nettleton Estates. With the consent of Kennett, six of eight parcel owners, or a 75% majority, effectively amended the Covenants to permit the keeping of three pigs and their offspring for up to six months of age.

### C. Attorney fees.

Article VII of the Covenants specifically provides for the award of attorney fees stating:

> In the event a person whose property is subject to these covenants is forced to seek litigation to enforce the terms of these covenants, the prevailing party shall be entitled to reasonable attorneys fees in addition to other allowable relief.

Pursuant to this section, Guindon is awarded attorney fees on appeal.

### IV.

### CONCLUSION

We affirm the district court's order granting summary judgment in favor of Guindon and award costs and attorney fees.

Justices SILAK, SCHROEDER, WALTERS and Judge Pro Tem SCHILLING, concur.

