66 P.3d 798

SUN VALLEY LAND AND MINERALS, INC., an Idaho Corporation; and Donna R. Kelsey, an individual, Plaintiffs–Counterdefendants–Respondents,

v.

Glen and Viola HAWKES, as Trustees of the Glen and Viola Hawkes Family Trust; Denise Bean; Dennis A. and Faye H. Dixon, as Trustees of the Dennis and Faye Dixon Family Trust; and Lee and Barbara Morgan, Defendants–Counterclaimants–Appellants.

No. 27528.

Supreme Court of Idaho,
Twin Falls, November 2002, Term.

Feb. 10, 2003.
Rehearing Denied April 10, 2003.

**544**

Parsons, Smith & Stone, Burley, for appellants. Richard K. Smith argued.

Lawson & Laski, PLLC, Ketchum, for respondents. Edward A. Lawson argued.

TROUT, Chief Justice.

This is a quiet title action to determine whether the appellant lot owners have property rights in a 240–acre tract of land in Blaine County by virtue of a subdivision plat and declaration of covenants, conditions, and restrictions for a failed subdivision recorded after a blanket mortgage had been recorded on the same property.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In the mid–1970's, developer Patrick Ryan (Ryan), through his corporation, Clarendon Hot Springs Ranch, Inc. (CHSR), began the process of developing two tracts of land in Blaine County. Ryan planned to first develop the 240–acre tract for light density residential use and later develop the 80–acre parcel. In order to finance this development, Ryan borrowed approximately $400,000 from First Federal Savings and Loan Association of Twin Falls (First Federal) secured by a mortgage on both parcels of property. On September 18, 1975, the mortgage was recorded in Blaine County.

On April 9, 1976, the Blaine County Board of Commissioners approved the Clarendon Subdivision Number 1 Plat (Plat) for development of the 240–acre parcel, conditioned on the performance of certain improvements, including the construction of water and sewer facilities and roads, within two years. To guarantee the work would be completed, Ryan provided a performance bond to the County. The improvements were never made.

On the same day the Plat was approved, Ryan recorded the Plat and a Declaration of Covenants, Conditions, and Restrictions (CC & R's) applicable to the 240–acre parcel. The Plat depicts a subdivision with several private roads and a cluster of 45 circular lots approximately ¼ acre each in size. The unusual circular design of the lots was intended to provide each owner with adequate buildable space while maximizing the open space available to all. The CC & R's indicate this open space, as well as all other property shown on the Plat and not dedicated to the

public, would be designated as the "Common Area." As the CC & R's further describe, this "Common Area" would be owned by a homeowners' association for the common use and enjoyment of the individual lot owners.

After the Plat and CC & R's had been recorded, CHSR sold a total of five lots to various owners, including the appellants, Glen and Viola Hawkes, Denise Bean, Dennis A. and Faye H. Dixon, and Lee and Barbara Morgan (collectively, the Lot Owners). Each of the Lot Owners' warranty deeds refers to the Plat and CC & R's. However, contrary to the CC & R's, when the lots were sold, no homeowners' association had been formed and no property rights in the land to be considered the "Common Area" had been conveyed.

In 1976, the first two conveyances, including the Morgans' purchase of Lot 45, were recorded and First Federal immediately signed and recorded a partial release of its mortgage as it applied to these properties. In 1979, the Hawkes purchased Lot 1, Denise Bean purchased Lot 2, and the Dixons purchased Lot 3. Again, First Federal immediately signed a partial release of the mortgage as applied to these parcels. These partial releases provide the mortgage was "released and discharged" as to the specific lots named in the subdivision, but the mortgage and lien were retained as to the rest of the property.

When the Lot Owners purchased their lots, there were two roads providing access to the lots from the main road. One of these roads traverses an old wooden dam (Dam Road), and the other crosses Deer Creek to the southwest (Lower Road). Upon purchasing the property, the Lot Owners began to occupy and improve their lots and the area surrounding them. They built corrals, performed some maintenance on both access routes, removed dead timber, and brought in mobile homes. In addition, some water and sewer systems were constructed, generators installed, and shower facilities built.

Ultimately, Ryan and CHSR defaulted on the First Federal loan. As a result, First Federal filed a foreclosure action in 1984.

The Lot Owners were not made parties to the foreclosure action and did not receive notice of the proceedings. The foreclosure resulted in a sheriff's sale to First Federal on May 25, 1984. After a series of subsequent owners, in 1998 Sun Valley Land and Minerals, Inc. (SVLM) acquired the 240-acre tract and Donna R. Kelsey (Kelsey) acquired the adjacent 80-acre tract.

In 1995 the original developer, Ryan, purchased a lot in the subdivision and brought an action against Kelsey and SVLM claiming (1) Kelsey and SVLM had an obligation to complete construction of the subdivision as platted and they breached that obligation and (2) the lot owners had common area and access rights by virtue of the mortgage releases. The district judge granted summary judgment on both issues in favor of Kelsey and SVLM and this Court affirmed the decision in *Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho 657, 962 P.2d 1042 (1998).

The instant action began on April 8, 1999, when the plaintiffs, Kelsey and SVLM, filed a complaint seeking to quiet title to both the 240-acre and 80-acre tracts of land. Defendant Lot Owners responded with an answer and counterclaim filed May 18, 1999. These claims were followed by cross motions for summary judgment.

On July 28, 2000, prior to a ruling on the motions for summary judgment, the Lot Owners filed an amended answer and counterclaim. The counterclaim presented three arguments in the alternative: first, the Lot Owners had vested rights in all easements, streets, alleys, parks, open spaces and common areas depicted on the Plat and further described in the CC & R's; second, the Lot Owners had property rights by adverse possession and prescription; and, as a third alternative, the Lot Owners had easement rights by implication or necessity. Thereafter, both parties filed renewed motions for summary judgment.

On October 11, 2000, the district judge granted SVLM and Kelsey partial summary

judgment holding (1) the Lot Owners did not obtain any vested fee ownership rights outside the boundaries of their circular lots stemming from the deed, Plat, and CC & R's and (2) the Lot Owners did not establish an ownership interest through adverse possession. Remaining issues of easement rights by prescription, implication, and necessity were litigated at a bench trial on October 24 and 25, 2000, and the district court held in favor of SVLM and Kelsey in all respects, except with regard to an easement by implication over the Lower Road for the benefit of the Lot Owners. On appeal, only those aspects of the lower court's decision determined on summary judgment are at issue.

## II.

### STANDARD OF REVIEW

■ This Court's review of a district court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Sun Valley v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 3, 981 P.2d 236, 238 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c).

## III.

### DISCUSSION

This case is basically a theoretical continuation of *Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho 657, 962 P.2d 1042 (1998). The central problem remains the same: a developer of a failed subdivision recorded a Plat and CC & R's on property already subject to a prior recorded mortgage. In *Sun Valley Hot Springs*, the former developer unsuccessfully argued the mortgagee impliedly consented to the Plat and CC & R's via the execution of partial mortgage releases. In this action, the Lot Owners essentially argue such consent was unnecessary. Their rights vested upon receipt of the deeds and are derived from the Plat and CC & R's. Conceding such property

rights are junior to the mortgage, the property owners now argue they should have been included in the foreclosure proceedings due to these junior interests and, because they were not, their interests in the property continue to exist.

The Lot Owners raise four issues on appeal: (1) whether the Lot Owners received any vested property rights in the common area; (2) whether the Lot Owners received any rights of access to their lots or to the use of the roads appearing on the Plat; (3) whether the Lot Owners' rights were eliminated by the foreclosure action; and (4) whether *Sun Valley Hot Springs Ranch, Inc. v. Kelsey* is the controlling authority in determining the Lot Owners' property rights. This Court addresses the first two issues together and affirms the lower court's decision holding the Lot Owners did not receive any rights to property outside the boundaries of their individual lots. Therefore, the issue regarding the effects of the foreclosure action is rendered moot. Further, this Court holds the lower court did not err in its reliance on the *Sun Valley Hot Springs Ranch* case, although the case does not directly resolve the present dispute.

**A. The District Judge Correctly Held the Lot Owners Did Not Acquire Any Property Rights Outside the Boundaries of Their Circular Lots.**

■ The Lot Owners argue they received vested property rights in the common area and the roads appearing on the Plat upon receipt of their warranty deeds, which incorporate the Plat and CC & R's. The Lot Owners' arguments are based on two interrelated theories. First, the Lot Owners argue the CC & R's granted express easements to each of the Lot Owners to and across the open areas not encompassed within their circular lots. Second, the Lot Owners argue the Plat created easements in common over the roads and open areas depicted on the Plat, based on a claim of common law private dedication. Both arguments fail essentially for the same reason: the CC & R's, as well as the Plat and over-all development scheme, manifest the desire of the developer to convey to the Lot Owners certain property

rights through the control of a homeowners' association. Because this homeowners' association was never formed and no property rights were ever conveyed, the Lot Owners' rights in the property at issue were never created.

All of the appellant Lot Owners purchased their lots by warranty deed referencing both the Plat and CC & R's. These warranty deeds describe the property conveyed by lot in the Clarendon Subdivision No. 1 in Blaine County "according to the official plat thereof" and "SUBJECT TO Declaration of Covenants, Conditions, and Restrictions affecting Clarendon Subdivision No.1."

Examining the CC & R's first, it is clear no easement rights were created to and across the open areas not encompassed within the Lot Owners' circular lots. In interpreting covenants, this Court applies general contract rule principles. *Nordstrom v. Guindon*, 135 Idaho 343, 345, 17 P.3d 287, 289 (2000). When the covenant terms are clear and unambiguous, their meaning is a question of law and, where ambiguous, their meaning is a question of fact. *Id.* Moreover, in interpreting any single provision in the covenants, the entire agreement must be viewed as a whole. *Id.* If an ambiguity is found, then the Court's inquiry moves beyond the four corners of the agreement in order to determine the intent of the parties at the time the instrument was drafted. *Id.* "The interpretation of the restrictive covenants intended by the drafters can be ascertained from the language of the covenants, the existing circumstances at the time of the formulation of the covenants, and the conduct of the parties." *Id.*

An easement is not an estate in land, but is merely an interest in land in the possession of another. *Shultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 950 (1976). To properly convey an express easement, the easement must be in writing. I.C. § 9–503.

The CC & R's recorded against the Clarendon property unambiguously fail to convey the easements claimed by the Lot Owners. To understand the Covenants, it is important to start first with the definitions. These definitions provide "Association" refers to "Clarendon Home Owner's Association, Inc., an Idaho nonprofit corporation, its successors and assigns" and "Common Area" refers to all those portions of the property depicted on a final plat, excluding portions of the property dedicated to the public, "which are owned by the Association for the common use and enjoyment of the members of the Association." A later provision in the CC & R's, Article II, Section Two, subparagraph a, further provides the members of the Association include "Each Owner of a Lot" and "Ownership of a Lot shall be the sole qualification for membership in the Association."

In addition to these definitions, there are three provisions in the CC & R's relating to the use and ownership of the described "Common Area." First, under Article VI, "Property Rights," Section One, "Members' Easements of Enjoyment," provides:

> Every member of the Association shall have a right and nonexclusive easement of enjoyment in and to the Common Area and nonexclusive easement for ingress and egress over and through the Private Driveways, and such easements shall be appurtenant to and shall pass with title to every Lot, subject to the following provisions
> . . . .

These provisions include various rights of the Association including but not limited to the following: (1) the right to limit the number of guests and regulate the use and enjoyment of the Common Area; (2) the right to borrow money for the purpose of improving the Common Area; and (3) the right to dedicate or transfer all or any part of the Common Area to any public agency, authority, or utility.

The second Covenant relating to the use or ownership of the Common Area is Article VI, Section Three, providing for the "Title to Common Area" and declaring Clarendon Hot Springs Ranch, Inc., "covenants for itself, its heirs and assigns, that it will convey fee simple title to the Common Area to the Association."

The third Covenant relating to the Common Area is Article VIII, "Easements," Section One:

> The Common Area shall be owned by the Association in fee simple for the use, en-

joyment and convenience of the Owners, and shall contain the parking areas, walkways, recreation areas, storage and trash areas, and all other areas not a part of the Lots.

This provision further provides each lot within the subdivision "is hereby declared to have an easement over all of the Common Area . . . and for ingress and egress over and through the Common Area."

Together, these Covenants clearly describe easements for the benefit of the Lot Owners in the Common Area and the Private Driveways. However, these easements necessarily provide for the Common Area to be owned and regulated by the homeowners' association. Perhaps the greatest indication of this is the very definition of the "Common Area," which defines this property in terms of the homeowners' association's ownership. Because the homeowners' association was never formed, the Common Area as described was never created, and the Lot Owners' alleged express easement rights clearly fail.

 In contrast to the purely textual analysis applied to the CC & R's, the common law private dedication claim requires evaluation of the CC & R's, the Plat, and the circumstances surrounding the alleged dedication. Dedication is essentially the setting aside of real property for the use or ownership of others. Idaho recognizes common law dedication of land both for public, as well as for private use. *Monaco v. Bennion*, 99 Idaho 529, 532, 585 P.2d 608, 611 (1978). The elements of a common law dedication are (1) an offer by the owner clearly and unequivocally indicating an intent to dedicate the land and (2) an acceptance of the offer. *Worley Highway Dist. v. Yacht Club*, 116 Idaho 219, 224, 775 P.2d 111, 116 (1989). The offer to dedicate may be made in a number of ways, including the act of recording or filing a subdivision plat depicting the specific areas subject to dedication, so long as there is a clear and unequivocal indication the owner intends to dedicate the land as depicted. *Id.* In determining whether the owner intended to offer the land for dedication, the court must examine the plat, as well as "the surrounding circumstances and conditions of the development and sale of lots."

*Dunham v. Hackney Airpark, Inc.*, 133 Idaho 613, 616, 990 P.2d 1224, 1226 (Ct.App. 1999) (citing *Smylie v. Pearsall*, 93 Idaho 188, 191, 457 P.2d 427, 430 (1969)) (quotations omitted).

The Lot Owners argue that the Plat, recorded and referenced in each of the Lot Owners' deeds, resulted in the creation of vested rights by illustrating private roads and open areas intended for the benefit of the lot owners. However, after examination of the Plat, in light of the CC & R's and other circumstances surrounding the development at the time the Plat was made, it is clear a common law private dedication was not intended, nor should one be implied for the purpose of protecting the Lot Owners, who were informed of the risks involved in this development prior to purchasing the lots. *Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho at 662–663, 962 P.2d at 1046–1047.

Beginning with the Clarendon Plat No.1, the map depicts 45 circular lots clustered around a number of private roadways with a relatively large amount of open space. The text on the Plat does not refer to the open space nor provide any indication for what this space is intended. However, the Plat does purport to reserve to the Lot Owners use of the private roadways. The "Certificate of Owners" states:

Roads shown on this plat of Clarendon Subdivision No.1, except for the Forest Service Road Right–of–Way, are not [for] the use of the public. The right to use said roads is hereby reserved for subdivision property owners, public utilities, and other users as designated by Clarendon Hot Springs Ranch, Inc.

Nonetheless, looking beyond the Plat to the CC & R's and over-all development scheme in order to accurately ascertain the developer's intent, it is clear neither the open space nor the private roadways depicted on the Plat were intended to be gifted to the Lot Owners. Again, the whole scheme envisioned by the developer, including the relatively small lots with shared access to larger areas of communal use, necessarily anticipated the centralized management and control of the homeowners' association. Because this homeowners' association was never

formed, the argument for a common law private dedication of the common areas and private roads, like the argument for express easements conveyed by the CC & R's, fails. Therefore, this Court holds, as a matter of law, no property rights outside the boundaries of the circular lots were conveyed.

## B. The Lot Owners Did Not Acquire Vested Rights in Their Lots through the Representations of the Original Developer.

The Lot Owners also argue they acquired vested rights in the common area and private roadways due to the representations of the former developer, Ryan. The Lot Owners argue it is undisputed that "Ryan, his agents and representatives, assured each of the Lot Owners that they were acquiring, in addition to their circular lots, a common easement across all of the open areas for their use in conjunction with their circular lots."

This Court has held that, under certain circumstances, misrepresentations of a developer alone may be sufficient evidence to establish a legally enforceable interest. *Middlekauff v. Lake Cascade, Inc.,* 110 Idaho 909, 913–914, 719 P.2d 1169, 1173–1174 (1986). Nevertheless, while *Middlekauff* stands for the idea that misrepresentation alone may be sufficient evidence, the right to relief must be based on an independent cause of action, such as misrepresentation or fraud. Further, in order to prove a representation in fact occurred, the court must make a factual inquiry into the circumstances surrounding the interaction between buyer and seller.

The Lot Owners' argument fails, because they do not provide a legal basis for their claim. Moreover, this Court already determined the Lot Owners were in fact informed of the risks involved in this development prior to purchasing the lots. *Sun Valley Hot Springs Ranch, Inc. v. Kelsey,* 131 Idaho at 662–663, 962 P.2d at 1046–1047.

## C. Remaining Issues on Appeal

Because this Court holds the lower court correctly determined the Lot Owners failed to establish rights in the property at issue, it is not necessary to discuss the Lot Owners rights vis-à-vis foreclosure. In addition, although the Lot Owners on appeal list three additional issues relating to easements by implication and prescriptive rights, these issues are deemed waived for lack of argument or authority. *Post v. Idaho Farmway, Inc.,* 135 Idaho 475, 20 P.3d 11 (2001).

## IV.

## CONCLUSION

The trial court did not err in determining the Lot Owners failed to establish any vested property rights in the property at issue and, therefore, it was unnecessary to address the effect of the foreclosure action. In light of the result, we award costs, but not fees, to Respondents SVLM and Kelsey on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN Concur.