70 P.3d 664

**PINEHAVEN PLANNING BOARD,
Plaintiff–Respondent,**

v.

**Thomas J. BROOKS and Jennifer
Brooks, Defendants–
Appellants.**

No. 27751.

Supreme Court of Idaho,
Idaho Falls, September 2002 Term.

Feb. 27, 2003.

Rehearing Denied May 27, 2003.

Howard Lopez & Kelly, PLLC, Boise, for appellants. Michael E. Kelly argued.

Hinman Law Offices, Idaho Falls, for respondent. Margaret B. Hinman argued.

TROUT, Chief Justice.

Appellants, Thomas J. and Jennifer Brooks (the "Brooks"), appeal from an order of summary judgment (1) declaring the short-term rental of their cabin in the Pinehaven Subdivision ("Subdivision") in Island Park, Idaho a violation of the Subdivision's restrictive covenants ("Covenants") and (2) permanently enjoining the Brooks from renting and listing the residence for short-term use.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In May 2000, the Brooks purchased residential property with a single-family dwelling in Island Park, Idaho. This property is located in the Pinehaven Subdivision and subject to the Pinehaven Covenants. The Pinehaven Covenants apply to all properties within the Pinehaven Subdivision, run with the land, and are binding on all subsequent purchasers. The Respondent, Pinehaven Planning Board ("Pinehaven"), part of the homeowner's association for the Pinehaven Subdivision, is authorized to enforce the Covenants. In addition to the Covenants, property within the Pinehaven subdivision is also subject to certain ordinances ("Ordinances") governing activities within the subdivision. Both the Covenants and Ordinances are intended to protect the residential nature of the Pinehaven Subdivision and the mutual enjoyment of the residential property.

The central issue in this case is whether the Covenants prohibit the short-term rental of residential property. Three Covenants speak to the issue. The first, Section 10, provides "[n]o commercial or industrial ventures or business of any type may be maintained or constructed" upon any residential lot. The second, Section 12, further provides "no more than one (1) single family dwelling may be constructed" upon any residential lot. A third Covenant, Section 27, provides for interpreting the meaning of certain terms in the document: "The Uniform Building Code shall be used to define any term not defined herein." Further, if a term is used that is

not defined in the Covenants or the Uniform Building Code, "Webster's Dictionary shall be the source used for definition of terms."

In the summer of 2000, the Brooks listed the subject property with a local real estate agent, Rainbow Realty, as a daily or weekly vacation rental. There is no evidence that the Brooks reside in or have ever resided in the residence at issue. Through Rainbow Realty, the Brooks rented the residence on at least two occasions. The first renters, a family awaiting the completion of their own home in Pinehaven, stayed for approximately three weeks. The second renters, a group of recreationists, stayed for approximately four to five days. At least one Pinehaven neighbor submitted an affidavit stating he felt these short-term rental situations disturbed his enjoyment of his residential property.

On June 1, 2000, Pinehaven advised the Brooks by letter that Pinehaven considered the daily and weekly rental of the residential property to be short-term rental use, a commercial lodging activity prohibited on residential property by the Pinehaven Covenants. In this letter, Pinehaven admitted it had permitted the Brooks to rent a different residence in the Pinehaven Subdivision on a yearly basis; however, the Board explained it interpreted the Covenants restricting residential use to allow long-term rentals, which it felt were consistent with the residential character of the subdivision, while prohibiting short-term rentals, which it felt threatened the residential character of the Subdivision.

On July 7, 2000, Pinehaven filed an action for breach of contract seeking (1) a declaration that the Brooks' rental activity violated the Pinehaven Covenants and (2) an injunction enjoining such activity. Pinehaven subsequently amended the complaint on October 26, 2000, and the Brooks filed an answer on November 24, 2000. Both parties pursued discovery and both filed motions for summary judgment. Pinehaven argued that the Covenants are unambiguous and clearly prohibit the short-term rental of residential property. The Brooks argued three possible theories: (1) the Covenants are unambiguous and clearly allow short-term rentals; (2) if the trial judge found that the Covenants

prohibited short-term rentals, then the Covenants are subject to two reasonable interpretations and, thus, are ambiguous; and (3) Pinehaven's allowance of other rentals in the subdivision constituted grounds for the equitable defenses of waiver and estoppel.

Following a hearing on June 4, 2001, the trial judge granted Pinehaven's motion and determined the Covenants were not ambiguous and clearly prohibited short-term rentals. Reviewing the Covenants as a whole, given the plain meaning of the terms, the trial court determined "residential" and "dwelling" were meant to include only single family dwellings, permanent dwellings, residential dwellings, and any other place to reside as opposed to a mere rental cabin for transient vacationers. The court explained short-term rentals, as a business use, effectively prevent other property owners from enjoying the benefits of the Covenants and Ordinances, which, together, establish the residential character of the neighborhood. Transient lodgers, lacking an investment in the neighborhood, are likely unaware of the existence of the Covenants and Ordinances, and there is no effective enforcement against them in case of breach.

## II.

### STANDARD OF REVIEW

■■■ This Court's review of a district court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Sun Valley v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 3, 981 P.2d 236, 238 (1999). Summary judgment is proper "if the pleadings, depositions, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Where the evidentiary facts are undisputed and the trial court will be the trier of fact, "summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Aberdeen–Springfield Canal v. Peiper*, 133 Idaho 82, 86, 982 P.2d 917, 921 (1999).

In this case, both parties filed motions for summary judgment on substantially the same issues, facts and theories, and the district court was the trier of fact. Therefore, the district court was free to draw the most probable inferences in construing the Covenants and this Court should affirm those inferences if reasonably supported by the record. *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999).

## III.

## DISCUSSION

This Court determines, as a matter of law, the Covenants are unambiguous and clearly allow the rental of residential property for profit. Further, even if this Court determined the Covenants were ambiguous, the ambiguity would still be resolved in the Brooks' favor.

■■■■ Idaho recognizes the validity of covenants that restrict the use of private property. *Nordstrom v. Guindon*, 135 Idaho 343, 345, 17 P.3d 287, 290 (2000)(citing *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996)). When interpreting such covenants, the Court generally applies the rules of contract construction. *Id.* However, because restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed. *Post v. Murphy*, 125 Idaho 473, 475, 873 P.2d 118, 120 (citing *Thomas v. Campbell*, 107 Idaho 398, 404, 690 P.2d 333, 339 (1984)). Further, all doubts are to be resolved in favor of the free use of land. *Id.*

■■■■ In applying the rules of contract construction, the court analyzes the document in two steps. Beginning with the plain language of the covenant, the first step is to determine whether or not there is an ambiguity. *Brown v. Perkins*, 129 Idaho at 193, 923 P.2d at 438 (citing *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995)). "Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous merely because they are not defined in the document where they are used." *City of Chubbuck v. City of Pocatello*,

127 Idaho at 201, 899 P.2d at 414. Rather, a covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue. *Post v. Murphy*, 125 Idaho at 475, 873 P.2d at 120 (citing *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980)). Ambiguity is a question of law subject to plenary review. *Brown v. Perkins*, 129 Idaho at 192, 923 P.2d at 437. To determine whether or not a covenant is ambiguous, the court must view the agreement as a whole. *Id.* at 193, 923 P.2d at 437.

■■■■ The second step in contract or covenant construction depends on whether or not an ambiguity has been found. If the covenants are unambiguous, then the court must apply them as a matter of law. *City of Chubbuck v. City of Pocatello*, 127 Idaho at 201, 899 P.2d at 414. "Where there is no ambiguity, there is no room for construction; the plain meaning governs." *Post v. Murphy*, 125 Idaho at 475, 873 P.2d at 120. Conversely, if there is an ambiguity in the covenants, then interpretation is a question of fact, and the Court must determine the intent of the parties at the time the instrument was drafted. *Brown v. Perkins*, 129 Idaho at 193, 923 P.2d at 438. To determine the drafters' intent, the Court looks to "the language of the covenants, the existing circumstances at the time of the formulation of the covenants, and the conduct of the parties." *Id.*

### A. The Pinehaven Covenants Are Unambiguous and Allow Rental of Residential Property

■■■■ The Pinehaven Covenants are not ambiguous and, according to their plain meaning, clearly allow the rental of residential property. The Covenants at issue together restrict the use of residential property to the construction of a single-family residence, which may not be used for commercial, industrial, or business purposes. Section 12 provides:

> Upon residential lots, no more than one (1) single family dwelling may be constructed: no multiple family dwelling shall be constructed; no more than one (1) ancillary building such as a garage, guest house,

boathouse, or combination building of that nature shall be built upon each lot, whether or not incorporated in the single family building.

Section 10 of the Covenants further states:

No commercial or industrial ventures or business of any type may be maintained or constructed upon any lot, except on the property ... which ... has been designated as "commercial property" by the previously adopted and recorded Protective Covenants or Subdivision plats.

Renting the property for residential purposes, whether short or long-term, does not fit within these prohibitions. The only building on the Brooks' property remains a single-family dwelling and renting this dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood.

This interpretation is further supported by the Section 27 of the Covenants, which provides the Uniform Building Code shall be consulted to provide definitions for terms not defined in the covenants themselves. The Uniform Building Code classifies occupancy into ten categories, including business occupancy and residential occupancy. International Conference of Building Officials, *1997 Uniform Building Code* (1997). Business use, referred to as "Group B Occupancies," includes "buildings, structures, or portions thereof, for office, professional or service-type transactions, which are not classified as [hazardous occupancies]." *Id.* at 1–15. Examples of business uses include animal hospitals, motor vehicle showrooms, banks, barber shops, car washes, laboratories, radio and television stations, and medical offices. *Id.* at 1–15 and 1–16. In contrast, residential use, referred to as "Group R Occupancies," include hotels, apartment houses, dwellings, and lodging houses. *Id.* at 1–26. These examples of business and residential use, incorporated in the Covenants, demonstrate the rental of residential property for residential purposes is more appropriately deemed residential as opposed to business use. Thus, the Covenants do not prohibit the rent-

al of residential property, whether such rental is short or long term.

Pinehaven's arguments to the contrary fail. Pinehaven contends the Covenants expressly forbid the short-term rental of residential property. Focusing on the Brooks' use of the residence, which is solely for the purposes of revenue generation, rather than the renter's use of the residence, Pinehaven concludes that short-term rental is a commercial activity. In support of this interpretation, Pinehaven cites two cases: *Munson v. Milton*, 948 S.W.2d 813 (Ct.App.Texas 1997) and *O'Connor v. Resort Custom Builders, Inc.*, 459 Mich. 335, 591 N.W.2d 216 (1999). However, these cases provide exceedingly narrow definitions of "residential use" based, in part, on covenants that limit residential property to residential use. In contrast, the Pinehaven Covenants do not limit the use of residential property to residential purposes. However, even if they did, the Covenants by their own terms incorporate the definitions provided in the Uniform Building Code and, as discussed above, the Uniform Building Code adopts a rather broad definition of residential, including apartment houses and hotels. For these reasons, this Court need not adopt the reasoning nor the narrow definitions of "residential" provided in the cases cited by Pinehaven.

**B. Even if this Court Determined the Covenants Were Ambiguous, They Would Still Be Construed As A Matter of Law in Favor of the Brooks and the Free Use of Land**

Even if this Court determined the Covenants at issue were ambiguous, because they are subject to more than one reasonable interpretation, they would still be construed in favor of the free use of land, as a matter of law. Given two reasonable interpretations of what constitutes "commercial use" the Brooks still prevail, because the ambiguity must be resolved in favor of the free use of land. The Oregon Supreme Court applied such reasoning in *Yogman v. Parrott* holding short-term rental a permissible use. 325 Or. 358, 937 P.2d 1019 (1997). The covenant at issue in *Yogman* provided residential property must be used "exclusively for residential

purposes and no commercial enterprise shall be constructed or permitted on any of said property." *Id.* at 1020. In constructing the covenant, the *Yogman* court conducted a three-part inquiry: first, determining the terms "commercial" and "residential" were ambiguous; second, finding the meaning remained ambiguous despite a general inquiry into the intent of the drafters; and third, ultimately resolving the matter by relying on the maxim of strict construction of restrictive covenants."

Thus, whether the Covenants are deemed ambiguous or unambiguous, the Brook's use of the single family dwelling for short-term vacation rental should be permitted. Because this Court has determined the Covenants do not clearly prohibit the rental of residential property for residential purposes, the Brooks' arguments relating to waiver and estoppel need not be addressed.

## C. Attorney's Fees

While both parties have requested attorney fees on appeal pursuant to Idaho Code § 12–121, neither party is entitled to fees, as this appeal was not brought, pursued or defended frivolously or unreasonably.

## IV.

## CONCLUSION

In Idaho, restrictive covenants are recognized but disfavored. For this reason, this Court will not extend by implication any restriction not clearly expressed in the Covenants themselves and all ambiguities must be resolved in favor of the free use of land. Therefore, whether the Pinehaven Covenants are deemed unambiguous or ambiguous, this Court resolves this dispute in favor of the Brooks. As a matter of law, the Pinehaven Covenants do not clearly prohibit the Brooks' use of the residential property as a short-term vacation rental. We award costs, but not fees, to Appellants.

Justices WALTERS, KIDWELL and EISMANN concur.

Justice SCHROEDER, dissenting.

I respectfully dissent from the decision of the Court. The anomaly is that I read the same words and find them unambiguous, clearly prohibiting the rental of the property. Section 10 provides that "no commercial or industrial ventures or business of any type may be maintained or constructed upon any residential lot." The Brooks are clearly using the property for a commercial venture and maintaining a business upon a residential lot. They are renting the property in the same manner as a motel. Reference to the Uniform Building Code does not subtract from the fact that Section 10 provides that "no commercial" venture or "business of any type" may be "maintained" on the property. This is a commercial venture, a business.