172 P.3d 1088

**BEST HILL COALITION, an unincorporated non-profit association; James E. Nethercott and Teresa M. Nethercott, husband and wife; and David L. Patzer and Jena E. Hayenga, husband and wife, Plaintiffs–Respondents,**

v.

**HALKO, LLC, an Idaho limited liability company, Defendant–Appellant.**

No. 33323.

Supreme Court of Idaho, Boise, September 2007 Term.

Nov. 23, 2007.

---

See also, 135 Idaho 343, 17 P.3d 287.

John F. Magnuson, Coeur d'Alene, for appellant.

Scott W. Reed, Coeur d'Alene, for respondents.

J. JONES, Justice.

HALKO, LLC, appeals the district court's grant of summary judgment upholding covenant provisions that established a "maximum base density" for the development of its land. We affirm.

## I.

In 1984, the owners of several adjoining parcels in Kootenai County agreed to form a subdivision known as the "Nettleton Estates." At that time they wrote and recorded their own subdivision covenants. The Nettleton Estates members amended the covenants in 1986 and 1995 in several important respects. First, the amendments allowed nearby property owners to unilaterally become subject to the covenants by executing an instrument indicating their election to do so. Second, the amendments stated that a purpose of the covenants was to "prevent overcrowding of the land covered by the covenants." Last, the amendments provided that changes to the covenants could be made only by a vote of seventy-five percent of the parcel owners in Nettleton Estates. Together, the 1984 covenants and the 1986 and 1995 amendments are known as the "Original Covenants." [1]

As of July 2005, eighteen parcels were encumbered by the Original Covenants, including eight parcels owned by HALKO and three owned by a HALKO member, Hallmark Homes, Inc. That month, HALKO applied to the City of Coeur d'Alene to annex 30.91 acres of its property into the City and to gain approval for a 35–lot planned unit development (PUD). At the time of HALKO's application, Nettleton Estates had nine separate property owners, including HALKO.

---

1. The Original Covenants were the subject of another case decided by this Court in 2000. *See* *Nordstrom v. Guindon,* 135 Idaho 343, 17 P.3d 287 (2000). In that case the Court held that each owner of property had only one vote on subdivision matters, regardless of the number of parcels it owned.

Other owners in Nettleton Estates objected to HALKO's plan. They formed the Best Hill Coalition ("Best Hill") to protest the application. Best Hill determined the best course of action would be to amend the Original Covenants in order to include a density limitation. However, members of Best Hill could not garner the necessary seventy-five percent of owners (or seven owners) required by the 1986 amendment in order to include a density provision. Therefore, Best Hill recruited adjoining landowners to join Nettleton Estates.

Seven adjoining landowners agreed to join Nettleton Estates. These landowners met and executed identical forms titled "Consent and Declaration of Owner to Amended Nettleton Estates Protective Covenants." With the additional members, Best Hill had the seventy-five percent majority required to amend the Original Covenants. Thus, at the same meeting, the new members of Nettleton Estates joined with the existing members to execute an Amendment to the Original Covenants ("Amendment"). The Amendment specified a "maximum base density" of one lot per two acres. It stated,

> The maximum base density of all property within the Nettleton Estates as originally platted, shall be one (1) lot per two (2.00) acres ... Said limitation of one (1) lot per two (2.00) acres shall apply to all lots as added by owners and adjacent or as in near proximity except for those added lots which are presently of a lesser size than one (1) lot per two (2.00) acres which are allowed but may not be further divided or split.

Best Hill notified HALKO and the City of Coeur d'Alene of the Amendment to the Original Covenants. HALKO subsequently withdrew its application to the City, but resubmitted it a few days later. Best Hill then filed its complaint seeking to enforce the density limitation in the Amendment.

Best Hill alleged HALKO's application for annexation to the City and approval of its PUD violated the new density limitation. Thus, Best Hill sought an injunction to prohibit HALKO from pursuing any development that exceeded the density limitation.

Shortly thereafter, Best Hill moved for summary judgment.

HALKO subsequently withdrew all applications to the City. It then filed an answer and counterclaim. It also moved to dismiss the complaint, contending Best Hill's suit presented a nonjusticiable controversy because it was not ripe for determination. HALKO stated it had no pending applications to the City and that it was developing a new plan to be in compliance with the density limitation.

The district court denied HALKO's motion to dismiss but granted Best Hill's motion for summary judgment, finding the Amendment to be a valid, enforceable covenant. The court enjoined HALKO from any development of its property with density greater than one lot per two acres.

HALKO moved for reconsideration. HALKO argued the Amendment, even if enforceable, was ambiguous. HALKO argued summary judgment was inappropriate because the issue of ambiguity presented a genuine issue of material fact. The court denied the motion for reconsideration, holding reasonable minds would not differ as to the interpretation of the Amendment, despite HALKO's presentation of two differing subdivision plats it claimed would comply with the density limitation. The court held HALKO's interpretation of the terms was not sufficient to establish that the Amendment was ambiguous when viewed as a whole. This appeal followed.

## II.

We are concerned in this appeal with two main issues: (1) whether the Amendment was ambiguous when viewed in context of the entire covenants and (2) whether the new members of Nettleton Estates gave sufficient consideration to support the Amendment. We affirm the district court's grant of summary judgment.

### A.

█ When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion. *Wat-*

*son v. Weick,* 141 Idaho 500, 504, 112 P.3d 788, 792 (2005). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). If there is no genuine issue of material fact, "only a question of law remains, over which this Court exercises free review." *Watson,* 141 Idaho at 504, 112 P.3d at 792.

## B.

■ This Court applies the general rules of contract construction to covenants. *Pinehaven Planning Bd. v. Brooks,* 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). Whether a contract is ambiguous is a question of law over which the Court exercises free review. *Intermountain Eye and Laser Centers, PLLC v. Miller,* 142 Idaho 218, 221, 127 P.3d 121, 125 (2005). A covenant is ambiguous if it is capable of more than one reasonable interpretation. *Pinehaven Planning Bd.,* 138 Idaho at 829, 70 P.3d at 667. To determine whether a covenant is ambiguous, the court must view the agreement as a whole to determine the intent of the parties at the time of contracting. *Id.* If a covenant is unambiguous, the court must apply its plain meaning as a matter of law. *Id.,* citing *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). If the covenant is ambiguous, its interpretation is a question of fact. *Intermountain Eye,* 142 Idaho at 221, 127 P.3d 121. Thus, in this case, if the Amendment was ambiguous, summary judgment would have been improper.

■ Idaho recognizes the validity of covenants that restrict the use of private property, although they are disfavored. *Pinehaven Planning Bd.,* 138 Idaho at 829, 70 P.3d at 667. The Court will not extend by implication any restriction not clearly expressed in the covenants because restrictive covenants are in derogation of the common law right to use land for all lawful purposes. *Id.* (citing *Post v. Murphy,* 125 Idaho 473, 475, 873 P.2d 118, 120 (1994)). All doubts must be resolved in favor of the free use of land. *Id.*

■ HALKO argues the phrase "maximum base density" in the Amendment is ambiguous. The provision at issue states, "[t]he maximum base density of all property within Nettleton Estates as originally platted, shall be one (1) lot per two (2.00) acres." HALKO contends this provision can have more than one reasonable interpretation because it does not contain a "minimum lot size" but, rather, a measurement of the overall density of an owner's property. HALKO submitted two plans to illustrate its point. One plan contains thirty lots, all of more than two acres, spread over the expanse of HALKO's property in the Nettleton Estates. The "base density" of this plan is 2.824 acres. The other plan proposes small lots of .20 to .33 acres, with more than seventy acres left in open space. The "base density" of this plan is also 2.824 acres. HALKO argues that either of these would be allowable under a reasonable interpretation of the "maximum base density" provision.

■ However, ambiguity is not established merely because a party presents differing interpretations to the court. *Rim View Trout Co. v. Higginson,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992). The Amendment must be viewed in the context of the whole Nettleton Estates covenants. The district court rejected the ambiguity argument on the basis that a plain reading of the Amendment, when viewed in the context of the entire covenants, indicated no ambiguity and meant that lots must be two acres or larger. The district court correctly noted that the 1986 amendment to the covenants included the statement "to prevent the overcrowding of land covered by the covenants." The language in the Amendment is somewhat awkward but, when viewed in this context and as a whole, is unambiguous.

■ HALKO contends that an individual owner's holdings should be aggregated for the purposes of determining compliance with the density limitation. This attenuated argument is based upon the Court's holding in *Nordstrom v. Guindon, supra,* concerning this same subdivision. There, the Court held that under the wording of the Original Covenants an individual landowner's holdings are

aggregated for the purposes of voting. Thus, each individual Nettleton Estates landowner has only a single vote, regardless of how many parcels it owns. Taking this holding to an unsupportable conclusion, HALKO argues that property should also be aggregated for purposes of determining compliance with the Amendment. For instance, if a property owner holds ten acres, the entire ten acres should be aggregated to determine compliance with the density limitation, allowing some lots to be larger than two acres and others to be smaller so long as the overall density complies with the limitation. However, this aggregation argument is not apparent from the plain language of the Amendment. "This Court will not interpose a meaning that is not clearly evident in the Covenants themselves." *Nordstrom*, 135 Idaho at 348, 17 P.3d at 292. Thus, HALKO's argument is unavailing.

## C.

HALKO argues the new members of Nettleton Estates did not give sufficient consideration to support the Amendment. HALKO contends that five of the seven members who joined Nettleton Estates, then immediately signed the Amendment, could not provide consideration because their lots were already less than two acres. As such, the density limitation imposed no burden on these new members. And, since they gave up nothing, there was no consideration to support the Amendment. However, HALKO's conception of consideration is erroneous.

It appeared to be HALKO's argument that to determine whether the five property owners in question gave sufficient consideration to support the Amendment depended upon whether they were individually burdened by the Amendment. If the Amendment did not burden them, then there was not sufficient consideration to support their vote in favor of it. HALKO presented no authority to support this extremely narrow view of consideration. The consideration provided by the newly joining members was that they were to be burdened by the entirety of the covenants, regardless of whether each individual provision applied in their particular situation. On

the other hand, they received consideration by virtue of the fact that they were entitled to the benefit of the entire set of covenants.

Furthermore, a written instrument is presumptive evidence of a consideration. I.C. § 29–103. "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." I.C. § 29–104. Under I.C. § 29–104, both the burden of going forward with the evidence and the burden of persuasion rest upon the party contesting the adequacy of consideration. *Dennett v. Kuenzli*, 130 Idaho 21, 25, 936 P.2d 219, 223 (Ct.App. 1997). HALKO failed to meet this burden. Rather, the new members subjected themselves to the restrictions and limitations in the entire covenants, providing the necessary consideration to support adoption of the Amendment. The district court correctly dismissed HALKO's consideration argument.

## D.

In its brief on appeal, HALKO raised several other issues that need not be addressed in detail. HALKO asserted that Best Hill's claim was non-judiciable and unripe for review because HALKO had withdrawn all development applications and stated it would comply with the density limitation in any subsequent development plan. However, HALKO's counsel conceded this issue during oral argument before the Court. HALKO argued that Best Hill should be foreclosed from enforcing the density limitation by virtue of the doctrine of quasi-estoppel. However, no evidence appears in the record to indicate that Best Hill induced HALKO to change its position to its detriment. *City of Sandpoint v. Sandpoint Independent Highway District*, 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994). HALKO asserted that the density limitation was violative of public policy, apparently because restrictions on the use of private property are disfavored and because the restrictions here were partially imposed by new members to the subdivision. However, HALKO fails to point to any public policy or legal authority that would prohibit new members of a subdivision from voting on amendments to subdivision covenants.

HALKO did contend that the consents of the new members to come under the covenants were not recorded until after the amendment was executed by them. However, as the district court stated, the Original Covenants do not require recording of either the consent or of an amendment to the covenants in order to be enforceable, absent any claim of lack of notice. There is no evidence to indicate that HALKO suffered any damage by virtue of the four-day delay between adoption of the amendment and the recording of the same.

### E.

Article VII of the Nettleton Estates Protective Covenants provides for the prevailing party in an enforcement action to be awarded attorney fees. This Court awarded fees under that provision in the prior action concerning this subdivision, *Nordstrom v. Guindon,* 135 Idaho at 348, 17 P.3d at 291, and we do likewise here.

### III.

We affirm the district court's ruling granting Best Hill's motion for summary judgment. Best Hill is awarded its costs and attorney fees on appeal.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and Justice Pro Tem TROUT concur.