# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37076

| | | |
|---|---|---|
| JACKLIN LAND COMPANY, an Idaho limited partnership, | ) ) ) | Boise, June 2011 Term |
| Plaintiff-Respondent, | ) ) | 2011 Opinion No. 77 |
| v. | ) ) | Filed: June 29, 2011 |
| BLUE DOG RV, INC., an Idaho corporation; THE PATTERSON FAMILY 2000 TRUST CREATED U/T/A DATED FEBRUARY 25, 2000; GAYLEN C. PATTERSON, TRUSTEE; THE BRANAGH FAMILY 2000 TRUST CREATED U/T/A DAGED JANUARY 13, 2000; JOHN A BRANAGH TRUSTEE; KL PROPERTIES, INC., a California corporation; RICHARD A. CORDES and SUZANNE M. CORDES, husband and wife; DAVID BARNES and MICHELLE BARNES, husband and wife; GARY L. PATTERSON and ELIZABETH PATTERSON, husband and wife; PHILLIP J. DION and KIMBERLY L. DION, husband and wife; and ANDREW J. BRANAGH and ANNE C. BRANAGH, husband and wife, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>vacated</u>.

Michael J. Hines, Lukins & Annis, P.S., Spokane, Washington, argued for appellants.

John F. Magnuson, Coeur d'Alene, argued for respondent.

---

EISMANN, Chief Justice.

This is an appeal from a summary judgment holding that the defendants violated restrictive covenants in a commercial development. Because the district court misapplied the applicable law, we vacate the judgment.

## I.

### Factual Background

Jacklin Land Company (Jacklin) owned real property near Interstate 90 in Post Falls that it developed into a commercial, professional, and industrial complex called Riverbend Commerce Park. The development was subject to covenants, conditions, and restrictions (CC&R's), which were recorded on November 7, 1988, and subsequently amended by documents recorded on July 26 and 27, 1989. Initially, the development was not intended to include retail businesses.

In 1990, Quality Centers Associates (QCA) desired to purchase from Jacklin seventeen contiguous unimproved lots on which to construct a shopping center, but it did not want the land to be subject to all of the CC&R's. Jacklin agreed to amend the CC&R's to provide that they did not apply to the seventeen lots, and it recorded an amendment so providing on November 7, 1990. On the same date, it recorded a contract (Agreement) in which QCA agreed to comply with and conform to Articles 2, 3, 4, 5, and 6 of the CC&R's. QCA then constructed a shopping center called "Factory Outlets" on thirteen of the lots, leaving lots 1 through 4 undeveloped. The Agreement also provided that it would be binding on QCA's successors and/or assigns. In 2005, a group consisting of a corporation, trusts, and individuals (herein collectively called KL Properties) purchased the shopping center and land from QCA.

In April 2008, a retailer of recreational vehicles named Blue Dog RV, Inc. (Blue Dog) began negotiating with Jacklin about the purchase of land in Riverbend Commerce Park from which to sell recreational vehicles. Blue Dog also discussed renting a building from Jacklin. During the course of the discussions, Blue Dog inquired about the four undeveloped lots across the street, and Jacklin provided Blue Dog with information on how to contact KL Properties. Ultimately, on July 1, 2008, Blue Dog entered into a written agreement with KL Properties to lease its four undeveloped lots.

During the ensuing week, Blue Dog relocated its retail sales operation to the four lots it was leasing from KL Properties. On July 7, 2008, Blue Dog informed Jacklin that Blue Dog had

2

leased the four lots from KL Properties. The following week, Jacklin informed KL Properties in writing that Blue Dog was to vacate the four lots within ten days. Further negotiations among the parties proved unfruitful, and on August 22, 2008, Jacklin filed this action seeking to enjoin KL Properties and Blue Dog from utilizing any portion of KL Properties's land for the purposes of a commercial recreational vehicle sales and/or rental facility or business. Jacklin also sought a declaratory judgment that the uses by Defendants of the four undeveloped lots violate the Agreement.

On December 11, 2008, Jacklin moved for summary judgment seeking an injunction permanently enjoining Defendants from using the property for a recreational vehicle dealership or facility and a declaratory judgment that such use violates the CC&R's. Two months later, Defendants moved for summary judgment on the grounds that the CC&R's were not binding on them, that the CC&R's did not prohibit Blue Dog's activities on the four lots, that Jacklin had failed to prove any irreparable injury, that it breached the implied covenant of good faith and fair dealing, and that its claim was barred by waiver and estoppel. After the motions were briefed and argued, the district court issued its decision on June 15, 2009, finding that the restrictive covenants were applicable to KL Properties because they were incorporated by reference into the Agreement; that Defendants had breached three articles of the restrictive covenants; that Jacklin had not breached the covenant of good faith and fair dealing; that the defenses of waiver and estoppel were inapplicable under the circumstances; and that Jacklin was not entitled to a preliminary injunction evicting Blue Dog from the property because Jacklin had not shown that any damage it may ultimately suffer could not be compensated by an award of damages.

Jacklin moved for reconsideration of the court's decision to deny it injunctive relief and filed a second motion for summary judgment addressing the same issue. Defendants moved for reconsideration, requesting an order that Jacklin was not entitled to either injunctive relief or damages. After those motions were briefed and argued, the district court issued a decision holding that Jacklin did not need to show irreparable harm in order to receive injunctive relief. It granted Jacklin's motions and denied Defendants' motion for reconsideration.

On October 19, 2009, the district court entered a judgment granting declaratory relief that Blue Dog's current use of the property violated parts (i), (ii), and (iii) of the Agreement and Articles 3 and 4 of the CC&R's that were incorporated into the Agreement. It ordered Defendants to cease and desist from using the four lots for the storage and/or parking of

3

recreational vehicles by October 25, 2009, and to take all action necessary to timely comply with the judgment. It also permanently enjoined Defendants from using any portion of the property in a manner that does not comply with the substance and procedures contained in the Agreement and Articles 2-6 of the CC&R's. Defendants then timely appealed.

## II.

### Did Defendants' Use of the Property Violate the Agreement?

The Agreement is a restriction upon the use of the real property purchased by KL Properties. Covenants that restrict the uses of land are valid and enforceable. *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996). However, "[b]ecause restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants." *Id.* Rather, "[a]ll doubts and ambiguities are to be resolved in favor of the free use of land." *Id.* Therefore, while clearly expressed restrictions will be upheld, "restrictions that are not clearly expressed will be resolved in favor of the free use of land." *Id.*

KL Properties does not dispute that it is bound by the terms of the Agreement. The district court held that Defendants violated parts (i), (ii), and (iii) of the Agreement.

Part (i) of the Agreement requires the owner of the seventeen lots "to construct and maintain upon said Purchased Property, a first class shopping center which shall be in compliance with all state and local building codes and ordinances." Jacklin does not assert that the existing shopping center constructed on the property is not "first class," nor is there any contention that such shopping center has not been maintained as a first class shopping center. What Jacklin contended and the district court held is that only a first class shopping center can be on any portion of the property purchased by KL Properties. If the four undeveloped lots do not have a first class shopping center on them, they must remain vacant. That is not a restriction clearly expressed in the Agreement.

It provides that the purchaser shall construct "*a* [singular] first class shopping center" on the property purchased. (Emphasis added.) There is nothing in the Agreement expressly stating that the shopping center shall cover all seventeen lots, nor is there anything expressly stating that only a first class shopping center can be constructed upon or occupy any portion of the property.

4

In fact, the Agreement incorporates by reference Article 6.2, which states, "A wide variety of business, commercial and light industrial uses are intended."

Jacklin argues on appeal that Blue Dog's business violates Article 6.3 of the CC&R's which prohibits a "[s]torage yard." The words "storage yard" are not defined. Construing ambiguities in favor of the free use of land, they could not reasonably be interpreted to include the display of recreational vehicles for sale.

Because a first class shopping center has been constructed and maintained upon the property, there is no violation of this provision in the Agreement. The district court erred in holding that the Agreement prevents anything but a first class shopping center from being located on the undeveloped lots.

Part (ii) of the Agreement requires the owner of the seventeen lots "to work together with Seller to achieve a mutually acceptable design and appearance for the shopping center so that it shall be aesthetically pleasing and compatible with other uses within Riverbend Commerce Park." Jacklin contended and the district court agreed that Defendants violated this provision of the Agreement because KL Properties did not achieve a mutually acceptable design and appearance for Blue Dog's business operated on the four undeveloped lots.

This provision of the Agreement only expressly applies to the design and appearance of "the shopping center." There is no shopping center located on the undeveloped lots. This provision has no application to those lots.

The Agreement does contain a provision applicable to undeveloped lots. Article 2.1 of the CC&R's, which is incorporated by reference into the Agreement, states, "Undeveloped and screened areas proposed for future expansion or current storage shall be maintained in a weed-free and dust controlled condition and shall be landscaped if required by Declarant." However, there is no contention that Defendants violated this provision. Because part (ii) of the Agreement does not apply to the four undeveloped lots, the district court erred in holding that using those lots for Blue Dog's business violated this provision.

Finally, Part (iii) of the Agreement provides that "despite its removal of record as to the Purchased Property, [the owner of the seventeen lots] agrees to comply and conform to Articles 2, 3, 4, 5 and 6 contained in those Declarations of Covenants, Conditions and Restrictions recorded November 28, 1988 [and the amendments recorded on July 26 and 27, 1989] . . . ." These Articles of the CC&R's impose requirements regarding landscaping (Article 2), parking

5

(Article 3), signs (Article 4), design and construction limitations (Article 5), and uses and operation (Article 6). The district court held that Defendants violated Articles 3 and 4 of the CC&R's.

Article 3 of the CC&R's applies to parking, but it does not define what constitutes parking. The district court held that the display of recreational vehicles for sale constitutes parking. Article 3 clearly deals with requirements for parking lots that would be used by retail customers, not the display of recreational vehicles for sale. Article 3.1 states: "There shall be no on-street parking. Property Owners must provide sufficient off-street parking." Article 3.2 requires, "Parking space shall be within three hundred feet (300') of the building to be served." Article 3.4 provides, "The required number of parking and loading spaces, together with driveways, aisles and other circulation areas, shall be improved with asphalt and/or concrete surface." Article 3.6 requires the "[p]arking area" to be illuminated, and Article 3.7 requires that "[a]ll parking areas shall be designed so that any vehicle leaving or entering the parking area to street or from street shall be traveling in a forward motion." Article 3.8 provides, "All parking areas shall be striped with lines between stalls to facilitate the movement into and out of the parking stalls," and Article 3.10 provides, "Number and design of parking stalls shall be regulated by parking restrictions of the City of Post Falls." Because restrictions on the use of property must be clearly expressed and any ambiguities resolved in favor of the free use of land, the district court erred in holding that Article 3 applies to the display of recreational vehicles for sale.

Article 4 of the CC&R's applies to signs. It is not, by its terms, limited to signs advertising the shopping center or located on lots upon which the shopping center was constructed. Article 4.1 states:

> Signs: General Requirements. Signs should be unobtrusive, conservative, and harmonize with the development. Signs shall be restricted to advertising only the person, products sold, departments, services rendered, firm, company or corporation operating at the location where the sign is placed and the product or service offered by property Owner, except identification of Declarant (or its associated business entities). Backs of all single sided signs shall be screened, or covered and maintained in a neutral color or colors that blend with the environment. All signs shall be properly maintained and kept in a neat and proper state of repair. To assure sign quality and design format, all signs shall be submitted and approved by the Owner's Corporation.

6

The district court found that Blue Dog's signs violated the last sentence of this provision because it did not submit its signs for approval by Jacklin. In their opening brief, Defendants did not challenge this finding. In their reply brief, they argued that Jacklin had failed to show any violation of this article. "[T]his Court will not consider arguments raised for the first time in the appellant's reply brief." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). Therefore, the district court did not err in holding that Defendants violated Article 4.1 of the CC&R's.

## III.

### Defendants' Defenses.

Defendants raised several defenses to Jacklin's motion for summary judgment. They argue that the district court erred in rejecting those defenses.

Defendants contend that none of the CC&R's could have been incorporated into the Agreement after the 1990 amendment, which states: "All restrictions of the 1990 and prior CCRs as apply [sic] to Lots 1-17 . . . are terminated. The same lots are specifically and intentionally excluded from the superseding 1990 CCRs." According to Defendants, as a result of that amendment the CC&R's were terminated and became null and void, preventing them from being incorporated by reference into a contract. Defendants cite no authority for this argument. The 1990 amendment did not render the CC&R's null and void. It only made them inapplicable to the seventeen lots as recorded CC&R's. However, the Agreement incorporated Articles 2 through 6 of the CC&R's by reference, making those provisions applicable to the seventeen lots.

Defendants contend that Jacklin cannot obtain injunctive relief because it cannot show irreparable harm and any harm it suffers can be remedied by monetary relief. Defendants rely upon Jacklin's deposition testimony given pursuant to Rule 30(b)(6)[1] in which its designee stated

---

[1] Rule 30(b)(6) of the Idaho Rules of Civil Procedure provides:

that he could not quantify any monetary damage or injury that Jacklin had suffered as a result of Blue Dog's operation, that such operation had not as of yet caused any irreparable harm to Jacklin, and that he could not identify a single tenant or land sale that Jacklin had lost because of such operation.

We have not held that permanent injunctions cannot under any circumstances issue without a finding of irreparable harm. For example, in *Cazier v. Economy Cash Stores*, 71 Idaho 178, 228 P.2d 436 (1951), we held that a business owner could enjoin a competitor from using a deceptively similar business name without having to show any actual damages. "Injunctive relief is available as a remedy against the breach of a restrictive covenant." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 262 (2005) (footnote omitted). "As a general rule, a restrictive covenant may be enforced irrespective of the amount of damage which would result from the breach and even though there is no substantial monetary damage to the complainant by reason of the violation." *Id*. at § 265 (footnotes omitted). Restrictive covenants are typically created with the intent of enhancing the value of property and often involve restrictions intended to promote aesthetics. Requiring proof of actual damages would often leave a covenantee remediless, because the nature of covenants would make proof of actual damages by any accurate standard unlikely. "The right to enjoin the breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach; the mere breach is sufficient ground for interference by injunction." *Id*. (footnote omitted). We hold that Jacklin was not required to show that it will suffer irreparable harm in order to be granted injunctive relief to enforce the restrictive covenants. Because the only legally supportable violation of the covenants found by the district court was the violation regarding Blue Dog's sign, the district court can enforce compliance with that covenant by an injunction.

Defendants assert that the district court erred in granting Jacklin injunctive relief because it too was in breach of the Agreement. They argue that "clause (ii) of the Development

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a nonparty organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) of this rule does not preclude taking a deposition by any other procedure authorized in these rules.

Agreement contractually obligated Jacklin 'to work together' with KLP 'to achieve a mutually acceptable design and appearance for the shopping center' " and that Jacklin refused to do so. Defendants contend that this failure was a breach of the Agreement and a breach of the implied covenant of good faith and fair dealing. As stated above, Part (ii) of the Agreement does not apply to the four undeveloped lots. Blue Dog's operation is not the shopping center, and Jacklin was not required to work with Blue Dog to achieve a mutually acceptable design and appearance for Blue Dog's operation.

Defendants claim that Jacklin waived the right to enforce the CC&R's or should be estopped from doing so because it allegedly assured Blue Dog that its sales operation would be compatible in the Riverbend Commerce Park. The only valid violation found by the district court was the violation of Article 4.1 relating to signs. Defendants do not allege any conduct by Jacklin that would constitute a basis for applying waiver or estoppel to that provision of the CC&R's.

Finally, Defendants also contend that "[t]he landscaping (Article 2), parking (Article 3), signage (Article 4), design and construction limitations (Article 5) all contemplate development of the property before the specific obligations are triggered." They do not cite any specific language in the CC&R's in support of that contention, nor do they support it with any argument. "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

None of the defenses raised by Defendants would prevent the district court from enjoining the violation of Article 4.1 of the CC&R's. Therefore, the district court did not err in failing to grant summary judgment that those defenses barred such injunctive relief.

**IV.**

**Did the District Court Err in Awarding Jacklin Court Costs and Attorney Fees?**

Defendants contend that the district court erred in awarding Jacklin court costs and attorney fees. The record on appeal does not contain any memorandum of costs filed by Jacklin, any motion to disallow costs filed by the Defendants, or any order awarding costs or attorney fees issued by the district court. "The appellant has the obligation to provide a sufficient record to substantiate his or her claims on appeal. In the absence of a record that is adequate to review

9

the appellant's claims, we will not presume error below." *Western Community Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002) (citations omitted).

## V.

## Is Jacklin Entitled to an Award of Attorney Fees on Appeal
## Pursuant to Idaho Code § 12-120(3)?

Jacklin seeks an award of attorney fees on appeal, contending that its claims arise out of a commercial transaction within the meaning of Idaho Code section 12-120(3). In order for that statute to apply, there must have been a commercial transaction between Jacklin and one or both of the Defendants. *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 472-73, 36 P.3d 218, 224-25 (2001). Blue Dog entered into a commercial transaction with KL Properties, and KL Properties entered into a commercial transaction with QCA, but there is nothing in the record indicating that either Defendant entered into a commercial transaction with Jacklin. That the property which KL Properties purchased and then leased to Blue Dog is subject to the provisions of the Agreement executed by Jacklin and QCA is not sufficient to constitute a commercial transaction between Jacklin and KL Properties or Blue Dog. Therefore, Jacklin is not entitled to an award of attorney fees on appeal.

## VI.

## Conclusion

We vacate the judgment of the district court and we remand this case for further proceedings that are consistent with this opinion. We add one caveat for the district court in drafting any future injunction. Its judgment, which we are vacating, provided that "Defendants and each of them and any and all persons or parties claiming by, through, or under Defendants are permanently enjoined from hereafter utilizing the subject property or any portion thereof in any manner that does not otherwise comply with the substance and procedures contained in the subject Agreement and Articles 2-6 of the CC&Rs incorporated therein." That portion of the judgment is erroneous in two respects. First, it enjoins actions that were not at issue in this case regarding provisions of a contract that includes ambiguous terms. Injunctive orders "must be specific and reasonably detailed. Basic fairness requires that the persons enjoined receive explicit notice of precisely what conduct is outlawed." 42 Am. Jur. 2d *Injnctions* § 260 (2010).

Second, it enjoins unknown persons who are not parties to this action. "To be enforceable, the decree or order must be definite and certain as to some known person or persons against whom the injunction is to operate. Generally, the relief may run only against those who are parties before the court, and the court must therefore tailor the injunction to affect those persons over whom it has power." *Id.* at § 262.

Because we vacate the judgment on the merits, we also vacate any award of costs and/or attorney fees based upon that judgment because the district court will have to redetermine the issue of a prevailing party, if any. Because both sides prevailed in part on appeal, we do not award costs.

Justice BURDICK, J. JONES, W. JONES and HORTON **CONCUR.**