# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42192

| | | |
|---|---|---|
| VIRGIL ADAMS, | ) | |
| | ) | |
|    Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBERLEY ONE TOWNHOUSE | ) | |
| OWNER'S ASSOCIATION, INC., an Idaho | ) | **Boise, June 2015 Term** |
| corporation; RICHARD MORGAN, | ) | |
| ANTHONY DAMER, JOANNE SPRINGER, | ) | **2015 Opinion No. 57** |
| JIM GREER, JON MARTIN, ANNE HAY, | ) | |
| DAVID RICKS, DOUG McWHORTER, | ) | **Filed: June 22, 2015** |
| CARA BROWN, BOB HAY, PAM HARDER, | ) | |
| and KEN DUNBAR, members of the Board of | ) | **Stephen W. Kenyon, Clerk** |
| Directors of KIMBERLEY ONE | ) | |
| TOWNHOUSE OWNER'S ASSOCIATION, | ) | |
| INC., | ) | |
| | ) | |
|    Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Cheri C. Copsey, District Judge.

The judgment of the district court is affirmed.

Trout Law, PLLC, Boise, for appellant. Kim J. Trout argued.

Anderson, Julian & Hull, LLP, Boise, for respondents. Phillip J. Collaer argued.

_____

J. JONES, Justice

Virgil Adams appeals the district court's order granting summary judgment in favor of Kimberley One Townhouse Owner's Association, Inc. (Association). Adams purchased a townhouse, subject to a declaration of covenants, conditions, and restrictions (1980 Declaration) that did not specifically restrict an owner's ability to lease his or her unit. Subsequently, the Association amended the 1980 Declaration to provide that an owner could not rent a unit for a period of less than six months. Adams argues the amendment constitutes an invalid restraint on

1

the free use of his land and that he did not have notice of the possibility of such a restriction under the general provision allowing "amendment" in the 1980 Declaration. We affirm.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In 1980, the developer of the Kimberley One Townhouses Subdivision (Subdivision) recorded the 1980 Declaration, and the Association was formed to provide certain controls for the Subdivision. The 1980 Declaration described real property containing forty residential lots and provided that all the lots "shall be held, sold and conveyed subject to the covenants, conditions, restrictions and easements [(CC&Rs)[1]] herein contained which are for the purpose of protecting the value and desirability of, and which shall run with, the real property." The 1980 Declaration defined the permitted "Use and Regulation of Uses" for the lots within the Subdivision, providing that "each lot shall be used for single family residential purposes only, on an ownership, rental or lease basis." The 1980 Declaration also contemplated the possible need for future amendments to that document by providing that the "Declaration may be amended . . . by an instrument signed by not less than ninety percent (90%) of the Lot Owners."[2]

In 2003, Adams purchased Lot 1[3] in the Subdivision, subject to the CC&Rs contained in the 1980 Declaration. The record does not clearly reveal who occupied Adams' unit during many of the years leading up to this case. During the pendency of this action, Adams has lived out of the country. But, it appears he lived in his Kimberley One unit from 2006 to 2007; his parents lived there in the period leading up to the short-term renting; and he began renting the unit as a vacation property in the summer of 2012, planning to use it himself during future summers.

When Adams began renting his unit as a vacation property, the short-term renters precipitated complaints from owner-occupants of other units within the Subdivision, such as renters taking produce from an owner's garden, excessive noise, and parking violations. These complaints were addressed at an Association board meeting in October 2012, the minutes from which were provided to each owner, including Adams. After receiving the meeting minutes,

---

[1] Throughout this opinion, we use "CC&Rs" to abbreviate "covenants, conditions, and restrictions," as a general term. When referring to the specific documents at issue in this case that contain CC&Rs, we refer to those documents as the "1980 Declaration," "2007 Amendment," and "2013 Amendment."

[2] In 2007, the Association recorded an Amended and Restated Declaration (2007 Amendment). The 2007 Amendment was adopted by the vote of more than ninety percent of the lot owners, as required by the 1980 Declaration, and Adams voted for its approval. The only change the 2007 Amendment made that is relevant to the current action was to reduce the vote required to amend the declaration from ninety percent to sixty-six and two-thirds percent. The provision regarding "Use and Regulation of Uses" remained the same as in the 1980 Declaration.

[3] Adams' property is also referred to as "Unit 1275."

Adams apologized for the problems and promised to remedy the situation. However, at its next meeting the board noted that there continued to be problems with the short-term renters and decided to move forward with a proposed amendment to the CC&Rs (2013 Amendment). Adams communicated with the Association members through email to strongly oppose the amendment. His attorney attended the annual meeting on his behalf and provided comments during the discussion.

The 2013 Amendment passed by an affirmative vote of eighty-nine percent. This amendment changed the permitted use of lots within the Subdivision by providing that units may be rented "only in strict accordance with the following" conditions: (a) the owner must execute a written document with the renter; (b) the document must be approved in advance by the board; (c) advertising for the unit must be approved by the board; (d) no rentals for fewer than six months will be approved; (e) no subleasing is permitted; (f) owner must provide contact information to the board; and (g) the board has discretion to grant exceptions to these rental requirements and to create house rules for their enforcement. When Adams continued to engage in short-term renting subsequent to the 2013 Amendment, the board enacted house rules that imposed a $300 fine for each day a unit is rented in violation of the short-term lease requirements and a $100 fine for each day a unit is advertised in violation of those requirements.

Shortly after the Association notified Adams he was in violation of the 2013 Amendment, he brought a declaratory judgment action seeking to invalidate that amendment. He also sought attorney fees. The Association moved for summary judgment and Adams filed a cross-motion for summary judgment. During a hearing on both motions the district court ruled from the bench, granting the Association's motion and denying Adams' motion. The court entered judgment against Adams and awarded costs and fees to the Association. Adams timely appealed.

## II.
## ISSUES ON APPEAL

1. Whether the 2013 Amendment provisions restricting rental activity are invalid.
2. Whether either party is entitled to attorney fees.

## III.
## ANALYSIS

### A. Standard of Review.

The standard of review on appeal from a grant of summary judgment is well-settled.

[T]his Court utilizes the same standard of review used by the district court

3

originally ruling on the motion. Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review.

*Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014) (internal case citations omitted). On discretionary matters, "[a] district court does not abuse its discretion when it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *Agrisource, Inc. v. Johnson*, 156 Idaho 903, 914, 332 P.3d 815, 826 (2014) (quotation marks omitted).

**B.      The district court correctly determined the validity of the 2013 Amendment.**

Adams argues the rental restrictions are invalid because: (1) they do not properly reflect the intent of the parties with respect to their original agreement; (2) Adams had an unrestricted, enforceable right to rent his property under the original agreement; (3) the CC&Rs must be construed in favor of the free use of land rather than in favor of the Association; and (4) the restriction allows for arbitrary discretionary enforcement by the Association.

"Covenants that restrict the uses of land are valid and enforceable." *Jacklin Land Co. v. Blue Dog RV, Inc.*, 151 Idaho 242, 246, 254 P.3d 1238, 1242 (2011). However, because restrictions on the free use of property are at odds with the common law right to use land for all lawful purposes, the Court will enforce such restrictions only when clearly expressed. *Sky Canyon Props. v. Golf Club at Black Rock, LLC*, 155 Idaho 604, 606, 315 P.3d 792, 794 (2013). All doubts in that regard should be "resolved in favor of the free use of land." *Id.* "Therefore, while clearly expressed restrictions will be upheld, restrictions that are not clearly expressed will be resolved in favor of the free use of land." *Jacklin Land*, 151 Idaho at 246, 254 P.3d at 1242 (internal quotation marks omitted).

This Court applies contract principles to interpret restrictive covenants. *Sky Canyon*, 155 Idaho at 606, 315 P.3d at 794. "Whether a contract is ambiguous is a question of law over which the Court exercises free review." *Best Hill Coal. v. Halko, LLC*, 144 Idaho 813, 817, 172 P.3d 1088, 1092 (2007). To determine whether ambiguity exists, "the court must view the agreement as a whole to determine the intent of the parties at the time of contracting. If a covenant is

4

unambiguous, the court must apply its plain meaning as a matter of law." *Id.* (internal citation omitted). Courts may not rewrite contracts, nor will equity "intervene to change the terms of a contract unless it produces unconscionable harm, is unlawful or violates public policy." *Shawver v. Huckleberry Estates*, 140 Idaho 354, 365, 93 P.3d 685, 696 (2004).

Neither party argues the 1980 Declaration or either subsequent amendment is ambiguous. Thus, we determine the intent of the parties from the language contained in that document. The provisions in question here are those relating to use of the property as a rental and to amendment of the declaration. The issue essentially boils down to whether the provision broadly allowing the "Declaration [to] be amended" authorizes the Association to restrict rental use of the property when there were previously no express restrictions on such use.

Adams' ownership of his unit is clearly subject to all the CC&Rs contained in the 1980 Declaration and he does not dispute this fact. The section of the 1980 Declaration titled "Use and Regulation of Uses," provides that "each lot shall be used for single family residential purposes only, on an ownership, rental or lease basis."[4] Another section of the 1980 Declaration, titled "Amendment," provides that during the first thirty years of its existence, the "Declaration may be amended . . . by an instrument signed by not less than ninety percent (90%) of the Lot Owners."[5] The district court found that the amendment provision was, in substance, "a method of abrogating and modifying" the declaration. It found "amend," when given its plain and ordinary meaning, clearly included the change made to the declaration in this case.[6] Adams argues the modification in the 2013 Amendment amounted to the *addition* of a *new* burden, which should be distinguished from the *amendment* of an *existing* burden, with the former being precluded under a general amendment provision. He argues that "amend" should be limited to smaller changes and changes to covenants and restrictions that are already addressed in the declaration.

This Court's reasoning in *Shawver* is instructive to the issue. There, purchasers entered

---

[4] There are a few other incidental references to rental activity in the 1980 Declaration as well. For example, one section provides that an owner may delegate his right to enjoy the common areas of the subdivision to "his tenants." Another section provides the permitted way for an owner to "advertise a dwelling unit for rent."

[5] The required percentage vote was later changed to two-thirds of the owners. Adams does not argue that the 2013 Amendment did not comply with the *procedure* required by the declaration, only that it exceeded the scope of what could be validly changed pursuant to an "amendment."

[6] Adams places much import on the court's language that suggests "amend" and "change" are essentially synonymous, and he devotes several pages of briefing to discussion of dictionary definitions of the two terms as well as the definitions of many other terms that contain the word "change," but are otherwise irrelevant to the issue at hand. We find Adams' argument on this matter unpersuasive, as there is no meaningful distinction in the context at hand between "change" and "amend."

into a purchase and sale agreement containing an acknowledgement that the purchasers had obtained and reviewed a copy of the Original CC&Rs. 140 Idaho at 358, 93 P.3d at 689. The Original CC&Rs contained a provision for the amendment of the CC&Rs, which provided: "Any amendment to these [CC&Rs] shall be approved in writing by at least seventy-five percent of the lot owners." *Id.* at 358, 361, 93 P.3d at 689, 692. After the Original CC&Rs were recorded, the purchasers submitted building plans that met the size requirements of the Original CC&Rs, but the developer returned them, informing the purchasers their plans were not approved. *Id.* at 358, 93 P.3d at 689. The developer subsequently recorded Amended CC&Rs[7] that, among other things, increased the minimum size requirements. *Id.* at 358–59, 93 P.3d at 689–90. The purchasers filed suit against the developer for breach of contract and argued, among other things, that the lot they were under contract to purchase should be subject only to the Original CC&Rs, which were those in effect when the parties executed the purchase and sale agreement. *Id.* at 359–62, 93 P.3d at 690–93. We rejected the purchasers' arguments that they should be bound only by the Original CC&Rs, reasoning:

> This argument is inconsistent with the language of the Sale Agreement. Under the express terms of the Sale Agreement, the [purchasers] agreed to purchase property governed by restrictive covenants, which could be amended by written consent of seventy-five percent of the existing lot owners. Such agreements are valid under the law. *See* 20 Am.Jur.2d *Covenants* § 236 (1995) ("[T]he restrictive agreements in a tract of land may provide for a method of abrogating or modifying such agreements, as, for example, by vote of a certain proportion of the property owners."). The [purchasers] had no right under the Sale Agreement to override the amendment provision or to avoid compliance in the event amendments were properly adopted. Courts do not possess the roving power to rewrite contracts in order to make them more equitable. The [purchasers'] position that the Sale Agreement was subject only to the original recorded CC&Rs is contrary to the agreement they made.

*Id.* at 361–62, 93 P.3d at 692–93 (internal citation and quotation marks omitted). We further stated that the Court would not use its powers of equity to relieve a party of terms it agreed to "unless it produces unconscionable harm, is unlawful or violates public policy." *Id.* at 365, 93 P.3d at 696. "There is doubtless a point when a party has changed his or her position in reliance upon the covenants in effect to a degree that enforcement of an amendment would be precluded, but that point was not demonstrated in this case." *Id.*

---

[7] The developer recorded Amended CC&Rs twice. The first time it did not have the vote required by the Original CC&Rs to amend, so the amendment was invalid. The developer later recorded Amended CC&Rs that did have the required vote. *Shawver*, 140 Idaho at 359–60, 93 P.3d at 690–91.

6

In *Best Hill*, we upheld an amendment that added a new restriction, not previously included in the CC&Rs. There, one of the members of a subdivision bound by CC&Rs owned eleven lots within the subdivision. 144 Idaho at 815, 172 P.3d at 1090. That owner wanted to subdivide a portion of its land within the subdivision into thirty-five new lots, but several other owners within the subdivision objected. *Id.* at 816, 172 P.3d at 1091. The owners voted to amend the CC&Rs to provide a *new* restriction, limiting the density within the subdivision so that no new lot could be less than two acres in size, which prevented the owner from subdividing the land as it had planned. *Id.* The amendment provision in the CC&Rs provided that "[t]hese restrictive covenants may be altered, amended or deleted in whole or in part, if agreed to in writing by seventy-five percent (75%) majority of the then parcel owners." *Nordstrom v. Guindon*, 135 Idaho 343, 347, 17 P.3d 287, 291 (2000).[8] In *Best Hill*, this Court upheld the validity of the new restriction and referred to that addition throughout the opinion as an "amendment." *See, e.g.*, 144 Idaho at 816, 172 P.3d at 1091.

Adams argues Idaho has not addressed the distinction between adding a new restriction to CC&Rs and amending an existing restriction, and he cites to several out-of-state cases to support his proposed distinction. Indeed, there is a split of authority among the states as to whether a new restriction on rental activity may be reasonably added under a general amendment provision, or whether a new restriction is per se unreasonable. *E.g.*, *compare Wilkinson v. Chiwawa Cmtys. Ass'n*, 327 P.3d 614, 622 (Wash. 2014) (holding a new restriction on short-term rental activity invalid, reasoning "homeowners cannot force a new restriction on a minority of unsuspecting Chiwawa homeowners unrelated to any existing covenant.") *with McElveen-Hunter v. Fountain Manor Ass'n*, 386 S.E.2d 435, 435–36 (N.C. Ct. App. 1989) (upholding an amendment that added a new restriction against rentals of less than one year, reasoning that the plaintiff purchased the units subject to the rights of other owners to restrict their occupancy and with notice before buying the units that the declaration was subject to change).

We find Idaho's approach to CC&R amendments to be more consistent with that line of cases which do not draw a bright-line distinction between the addition of new restrictions and the modification of existing restrictions. We do, of course, agree with the *Shawver* Court that there is a point at which an amendment to CC&Rs will go too far, and have too adverse an effect on

---

[8] The *Best Hill* Court did not provide the language of the amendment provision but noted that *Guindon* dealt directly with the same CC&Rs from the same subdivision as *Best Hill*. *Best Hill*, 144 Idaho at 815 n.1, 172 P.3d at 1090 n.1.

those bound by it, in which case the amendment would be precluded. *See* 140 Idaho at 365, 93 P.3d at 696. However, the fact that a restriction was not previously addressed in the CC&Rs prior to an amendment does not automatically mean that amendment has gone too far, as shown by *Best Hill*.

The amendment in the case at hand has not reached the tipping point. *Shawver* generally suggests that parties should be bound by the terms to which they agree, including a term allowing the significant future alteration of the agreement, unless a term produces unconscionable harm. The record reflects that Adams had only been renting his unit as a vacation property for a few months when the Association began discussing an amendment. We are not faced with a situation where Adams was permitted to engage in short-term renting for ten years and then, all of a sudden, an amendment no longer permitted such use. Additionally, he is still permitted to rent his property as long as he complies with the terms of the new amendment. Even prior to the amendment, the rental activity was limited by the declaration to allow rentals or leases "for single family residential purposes only." In substance, the 2013 Amendment simply narrowed what may be considered a "single family residential purpose." That term implies a certain degree of long-term or stable occupancy of the residence, rather than it being used as a hotel as Adams had. The 2013 Amendment simply provided clarity to that term.

Although the amendment requires Adams to change how he uses his property, *Shawver* shows that significant changes are permitted under a general amendment provision in CC&Rs. There, the purchaser executed the purchase agreement in reliance on the Original CC&Rs providing a certain minimum size requirement. Here, Adams executed his warranty deed in reliance on the 1980 Declaration having no restrictions on his ability to use his unit as a vacation rental. There, although the CC&Rs were amended to change the size requirements, preventing the purchasers from building the house they designed in reliance on the Original CC&Rs, the Court held the purchasers to their agreement, which included the general right of the owners to amend. Likewise, here, although Adams purchased his home in reliance on his ability to rent it as he pleased, he is bound by the 1980 Declaration as a whole, which included the general right of the owners to amend. Adams argues the amendment deprived him of the benefit of his bargain by failing to give effect to the provision that expressly allowed him an unrestricted right to rent his unit. However, as we stated in *Shawver*, preventing the Association from amending as it sees fit does not give effect to the amendment provision in the declaration. Adams agreed to the entire

1980 Declaration, including the amendment provision, and allowing him to now avoid compliance with that provision is inconsistent with the bargain he made.

Adams argues that to allow amendments of the type in this case creates a slippery slope that provides no protection for owners in the minority voting position. However, this disadvantage to those in minority voting position was apparent from the 1980 Declaration at the time of the original purchase. Under the 1980 Declaration, ten percent of the homeowners could be bound by an amendment they did not want if the majority had the requisite ninety percent of the vote to support the change. This fact is obvious and unambiguous on the face of the agreement, and if Adams was not willing to agree to the amendment term, he was free to walk away from the transaction.

Finally, Adams argues the 2013 Amendment is invalid because it allows arbitrary enforcement and discriminatory application. He contends the Association sought to impose the new restrictions solely on his unit. He bases this argument on the fact that it was problems with the rental of his unit that prompted the Association's discussion of a possible amendment. Indeed, the meeting minutes from the first board meeting where the problem was discussed listed as an agenda item, "Unit 1275 Rental Issues: This unit is now being rented by the day, week, or month. This has created a number of problems." Additionally, the deposition of one of the board members confirmed that it was Adams' short-term rental that led to the board's broader discussion at that first meeting regarding security and other issues associated with short-term rentals. The 2013 Amendment provides that "all of the properties described above [(which includes all units in the subdivision)] shall be held, sold, and conveyed subject to the [CC&Rs] herein contained." Further, the provision specifically addressing rental activity expressly provides that it applies to "each lot" in the Subdivision. Although it was Adams' conduct that precipitated the need for the amendment, there is nothing in the language of the 2013 Amendment that could reasonably be interpreted to apply only to Adams' unit. All the rental restrictions facially apply equally to all units within the Subdivision.

Adams further argues the board's discretion to grant exceptions to the rental restrictions shows that the amendment does not apply equally to all units. He argues the board provided itself with such discretion to allow it to enforce the rental restriction "solely against Appellant, Mr. Adams." However, there is nothing in the record to suggest, nor does Adams argue, that the board has engaged in any conduct amounting to discriminatory enforcement. It is illogical to

assume the board would not equally restrict all owners from short-term rentals, as it is likely that similar problems would arise no matter which owner was renting his or her unit. Even if Adams assumes the rental restrictions will only be enforced against him, the assumption that a provision of the CC&Rs will likely be breached in the future does not give rise to a cause of action. *See Indep. Sch. Dist. of Boise City v. Harris Family Ltd. P'ship*, 150 Idaho 583, 588, 249 P.3d 382, 387 (2011). Therefore, Adams' argument that the 2013 Amendment is invalid because it is arbitrary and discriminatory is without merit.

The Association's position is more consistent with Idaho's approach to CC&R amendments, as evidenced by the Court's strong language in *Shawver* and the fact that the Court in *Best Hill* allowed the addition of a new restriction under a general amendment provision. Therefore, we hold that the district court properly determined the 2013 Amendment was validly made within the scope of the plain language of the amendment provision.

## C.    Attorney Fees.

### 1.  The district court did not abuse its discretion in awarding attorney fees below.

Pursuant to a provision in the declaration allowing attorney fees to the prevailing party in an action to enforce the CC&Rs, the district court awarded attorney fees to the Association. On appeal, Adams argues the attorney fees below were inappropriately ordered because this was not an enforcement action but a declaratory judgment action. The district court did not abuse its discretion in ordering attorney fees under the CC&R provision.

"In any civil action the court may award reasonable attorney fees . . . to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract." I.R.C.P. 54(e)(1). The applicable declaration provision in this case provides that: "In the event suit is brought to enforce the covenants contained herein, the prevailing party shall be entitled to be awarded his reasonable attorneys fees in addition to allowed costs." In awarding fees to the Association, the district court reasoned that the declaration constituted a contract and that attorney fees may be awarded if agreed to under contract. The court further reasoned that this action constituted an enforcement action because, by determining the validity of the 2013 Amendment, it is essentially an action related to the enforcement of the rental restriction. It also noted that, although Adams was now arguing that attorney fees were inappropriate because the action was not an *enforcement* action, in his complaint Adams requested attorney fees under the enforcement provision of the declaration.

The action in this case appropriately resulted in the award of attorney fees below. Although Adams titled his complaint an action for declaratory judgment, he also characterized the action in various places as an "existing controversy as to the validity and *enforceability* of the [2013 Amendment]" and as entitling Adams to attorney fees "as the prevailing party in the *enforcement* of the original covenants." (Emphasis added). In addition to these characterizations of the action, Adams alleged that he was entitled to attorney fees under the provision in the declaration allowing fees to the prevailing party in an action to enforce the declaration. Further, Adams argues on appeal that he is entitled to attorney fees "aris[ing] from the fee provisions of the CC&R's." In substance, this action was brought in response to the Association's attempt to enforce the 2013 Amendment and was an attempt by Adams to prevent enforcement of the 2013 amendment and to enforce the use provisions of the previous versions of the declaration. Therefore this action was properly characterized as one "to enforce the [CC&Rs]," and the award of attorney fees below was not an abuse of discretion.

## 2. Attorney fees on appeal.

The Association argues it is also entitled to attorney fees on appeal, authorized pursuant to the same declaration provision discussed above. Applying the same reasoning as stated above with respect to the attorney fees at the district court, the Association is entitled to attorney fees on appeal pursuant to the declaration.

## IV.
## CONCLUSION

We affirm the judgment of the district court and award the Association costs and attorney fees on appeal.


Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.

11